Paula Mazur DUBIN, individually and as the trustee of the Paula Mazur Dubin Living Trust; Paula Mazur Dubin Living Trust; George Mazur; and Irene Bilek, as personal representative of the Estate of Margaret Stary, Appellants

v.

COUNTY OF NORTHUMBERLAND, UAE Coalcorp, a Pennsylvania Corporation, UAE Coalcorp Associates, a Pennsylvania Limited Partnership.

Commonwealth Court of Pennsylvania.

Argued March 30, 2004.
Decided April 22, 2004.

Spero T. Lappas, Harrisburg, for appellants.

Stephen S. Cook, Pottsville, for appellees.

BEFORE: SMITH–RIBNER, Judge, PELLEGRINI, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge PELLEGRINI.

George Mazur, Paula Mazur–Dubin, the Living Trust of Paula Mazur Dubin, and Irene Bilek, as the personal representative of the Estate of Margaret Stary (collectively, Mazurs) appeal from an order of the Northumberland County Court of Common Pleas (trial court) denying their motion for partial summary judgment/judgment on the pleadings and granting the counter-motion for summary judgment filed by Northumberland County, UAE Coalcorp and UAE Coalcorp Associates.

On July 22, 1970, Northumberland County [1] conveyed 166.862 acres of surface estate (Mazur surface estate), recognized as part of the "David Kennedy Tract," to Rudolph Stary of Arlington, Virginia; George Mazur of Washington, D.C.; and John Mazur of Mount Carmel, Pennsylvania. Because the "David Kennedy Tract" was acquired for payment of delinquent taxes, Northumberland County sold the property on behalf of itself and the other governmental bodies that were owed delinquent taxes. The deed provided:

This document does not sell, convey, transfer, include or insure the title to the coal and the right of support underneath the surface land described or referred to herein, and the owner or owners of such coal have the complete legal right to remove all of such coal and, in that connection, damage may result to the surface of the land and any house, building or other structure on or in such land.[2]

(Reproduced Record at 181A.) George Mazur maintains his interest in the surface estate. However, Paula Mazur–Dubin, the Living Trust of Paula Mazur Dubin, and the Estate of Margaret Stary, also acquired an interest in the Mazur surface estate.[3]

In November of 1988, Northumberland County, acting for itself and other taxing bodies, signed a ten-year lease of certain mineral estates, specifically "Lykens No. 2 Vein," a portion of which ran beneath the Mazur surface estate, to UAE Coalcorp (UAE).[4] In the years following entry into that lease, modifications and extensions were made, including the leasing of addi-

---

1. This property was apparently turned over to Northumberland County because it had been previously acquired at a tax sale prior to the effective date of the Real Estate Tax Sale Law (Law), Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101—5860.803. After that date, "[A]ll rights and title to the property, held by such taxing district or trustee, shall vest in the county, as trustee, for all taxing districts having the power to levy taxes against such property, if it were privately owned, and [the county tax claim bureau] shall become the agent of all taxing districts having an interest in the management and control of such property with the following powers and duties with respect thereto." 72 P.S. § 5860.701.

2. For simplicity, we will refer to this provision as a "coal clause."

3. Paula Mazur–Dubin obtained her interest in the Mazur surface estate from Lorraine Ann Mazur who was a beneficiary of John Mazur's estate. The deed by which Lorraine Mazur received her one-third interest in the surface estate also contains a "coal clause" clearly indicating her receipt of only a surface estate. An identical clause is in the deed conveying this property from Lorraine Ann Mazur to the Paula Mazur–Dubin Living Trust.

Further, according to copies of Letters of Administration filed in the Northumberland County Register of Wills Office, Rudolph Stary died in Fairfax County, Virginia on August 25, 1974, and the deed by which Margaret Stary obtained Rudolph Stary's interest from the latter's estate also included a "coal clause" confirming that the conveyance is for the surface estate alone.

4. On September 26, 1990, UAE Coalcorp assigned its rights under the lease to UAE Coalcorp Associates. For simplicity, we will refer to both UAE Coalcorp and UAE Coalcorp Associates as UAE.

tional mineral estates by UAE and a September 10, 1998 extension of the mineral estate lease for an additional ten-year period. During and before the execution of the lease and its extension and expansion, the Mazurs requested, personally and through agents, that they be granted mining leases to harvest the coal beneath their surface estate. On all such occasions, the requests were denied.

The Mazurs filed a complaint with the trial court seeking judgments "at law" and "in equity" against Northumberland County and UAE alleging that the leases between Northumberland County and UAE were void *ab initio* because they were in violation of Section 702 of the Law, specifically, because Northumberland County was prohibited against entering into a lease for property for more than one year. This provision provides, in pertinent part:

> The property turned over to [the county tax claim bureau], as provided in the preceding section, shall not be subject to redemption and until finally sold, as hereinafter provided, the bureau shall manage and control the property for the trustee county with power, (a) **to lease the property for a period not exceeding one (1) year with the usual privilege of renewal on termination thereof upon three** (3) months notice, and any such lease may be on a royalty basis for the purpose of extracting any minerals or oil or the cutting of timber. (Emphasis added.)

72 P.S. § 5860.702(a). Because the lease was void, they then claimed that Northum-

berland County and UAE had been wrongfully enriched to their detriment in the amount of all profits and benefits which Northumberland County and UAE had received during the pendency of the leases.[5] After the Mazurs filed several amended complaints, Northumberland County and UAE filed answers raising the affirmative defenses of estoppel, laches, res judicata/collateral estoppel, statute of limitations, lack of standing and failure to state a claim upon which relief can be granted.[6] The Mazurs then filed a motion for partial summary judgment and/or judgment on the pleadings. Northumberland County filed a response, and UAE filed a counter-motion for partial summary judgment.

Agreeing with the Mazurs that the leases were in violation of Section 702 of the Law, but rather than being void *ab initio* and of no effect, the trial court found that the leases were merely voidable in that this language was to be read into the agreement so that either party could renew or terminate the lease for the coal extraction on three months notice. The trial court also found that there was no requirement that the coal lease be put out to bid, and that the Mazurs did not make out a claim of unjust enrichment because they failed to make out a claim that anyone was unjustly enriched, but even if that occurred, they were entitled to any money. As a result, the trial court denied Mazurs' motion for partial summary judgment/judgment on the pleadings and granted UAE's counter-motion for summary judgment. This appeal followed.[7]

**5.** The Mazurs sought that all benefits and wrongful enrichment would become the corpus of a constructive trust to the benefit of all of the land owners, and also sought money damages in an amount to be determined by a court or jury.

**6.** UAE filed a cross-claim against Northumberland County alleging a breach of contract/quiet enjoyment.

**7.** Our scope of review of a trial court's order granting or denying summary judgment is limited to determining whether the trial court committed an error of law or an abuse of discretion. Summary judgment is only ap-

■ Arguing that the language contained in Section 702(a) is mandatory that the bureau "shall ... lease the property for a period not exceeding one (1) year," the Mazurs argue that the ten-year lease period renders the lease void. They also argue it is void under the standard principles of statutory construction, which require that the plain meaning of the word "shall" must be enforced, and that normal rules of grammar and everyday usage define terms which are not internally defined by statute.

In determining whether a statute is mandatory or directory, Judge Woodside stated in *Borough of Pleasant Hills v. Carroll*, 182 Pa.Super. 102, 125 A.2d 466, 469 (1956) that:

> To hold that a provision is directory rather than mandatory does not mean that it is optional—to be ignored at will. Both mandatory and directory provisions of the legislature are meant to be followed. It is only in the *effect* of noncompliance that a distinction arises. A provision is mandatory when failure to follow it renders the proceedings to which it relates illegal and void; it is directory when the failure to follow it does not invalidate the proceedings. Whether a particular statute is mandatory or directory, does not depend upon its form, but, as we stated above, upon the intention of the legislature, to be ascertained from a consideration of the entire act, its nature, its object, and the consequences which would result from construing it one way or the other.

We more recently stated in *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 789 A.2d 858, 862 n. 3, (Pa. Cmwlth.2002) that:

> If the thing directed to be done is the essence of the thing required, then the statute is mandatory. If, however, the statute directs that certain proceedings be done in a certain manner or time, then it is directory. Failure to follow a mandatory statute renders the proceedings void, whereas the failure to follow a directory statute does not. (Citations omitted.)

Looking at the provision in its entirety, its object and nature is to authorize and empower local governments to sell at public sales lands or real estate upon which taxes assessed are delinquent and unpaid. Despite the use of the term "shall," this provision is directing that the tax claim bureau has the power to lease property it manages in trust for the purchasing taxing districts *in a certain manner*, specifically, in renewable one-year leases. Even though the contract between Northumberland County and UAE is illegal as to its duration, the law still allows mutually renewable one-year leases which would have no effect on the current status of the leases in that the contractual parties, notwithstanding the illegality, expressed their intent to continue the leases. Therefore, despite the use of the term "shall," after considering the statute in its entirety, its nature and object and the consequences that would result from construing it one way or another, it is clear that the legislature intended the language of Section 702(a) of the Law to be directory and not mandatory.[8] Therefore, the trial court did

---

propriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Pa. R.C.P. No. 1035.2; *Green Valley Dry Cleaners, Inc. v. Westmoreland County Industrial Development*

*Corporation*, 832 A.2d 1143 (Pa.Cmwlth. 2003); *Sanchez v. Philadelphia Housing Authority*, 148 Pa.Cmwlth. 329, 611 A.2d 346 (1992).

8. The Mazurs also argue that in *In re Canvass of Absentee Ballots of November 4, 2003 General Election*, —— Pa. ——, 843 A.2d 1223

not err in finding the mining leases to be voidable.

■ Even if the leases were merely voidable, the Mazurs then argue that the coal leases should have been put out to bid. While that may be the better practice, Section 702 of the Act has no requirement for public bidding. In fact, that section states that the county tax claim bureaus can:

> [A]dvertise the property for sale or for rent, . . . appoint an agent or agents who shall be a licensed real estate broker or agent to collect the rentals, . . . harvest and sell the crops or produce of the property, . . . sell any scrap or salvage resulting from repairs or alterations to buildings on the property or from the demolition of buildings no longer safe for occupancy, . . . sell the property at private sale, to give options thereon and receive option money, and

to make deeds for such property when sold.

72 P.S. § 5860.702(c). Further, Sections 202 and 2306 of The County Code, Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. §§ 202 and 2306, clearly establish that no competitive bidding is required before entering into a lease. Section 202 provides that each county has the ability to "hold, lease, let and convey such real and personal property as shall be deemed to be for the best interests of the county." 16 P.S. § 202(3). Section 2306 provides, "the Board of Commissioners may, . . . lease, either as a lesser or lessee, any real property" without any requirement for competitive bidding. 16 P.S. § 2306(a).[9] As such, the trial court did not err in finding that there was no requirement for public bidding attached to the mining leases at issue.[10]

Accordingly, the decision of the trial court is affirmed.

---

(2004), our Supreme Court, in effect, decided that "shall" is always to be interpreted as mandatory. In that case, the Supreme Court held that the language of Section 1306.1 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, 25 P.S. § 3146.6(a), "the elector shall send [an absentee ballot] by mail, postage, except where franked, or deliver it in person to the board of election," did not allow for a non-disabled absentee voter to hand-deliver his or her absentee ballot by way of a third party. Although the Court did interpret the term "shall" as used in Section 1306.1 of the Election Code as a word carrying an imperative or mandatory meaning, it did state that in some contexts, the term can mean "may," and that it is the intention of the legislature which governs how the word is to be interpreted. *See In re Canvass,* 843 A.2d at 1231–32. In this case, though, the statute authorizes and empowers the county tax claim bureau by stating that it "shall" manage and control the real estate property upon which taxes assessed are delinquent and unpaid by, amongst other things, entering into renewable one-year leases. It does not require the bureau to enter into any lease at all. Because Northumberland County and UAE could have renewed a one-year lease every year, the statute is not undermined by interpreting it in a directory, rather than a mandatory, way and making the content voidable and not void.

9. Subsection (b) of Section 2306 actually allows certain sales or leases (not applicable here) for "nominal consideration." 16 P.S. § 2306(b).

10. The Mazurs also contend that the trial court erred in finding that they did not state a claim for unjust enrichment. The essential elements of unjust enrichment are benefits conferred on a defendant by a plaintiff, the appreciation of such benefits by a defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for a defendant to retain the benefit without payment. *Schenck v. K.E. David, Ltd.,* 446 Pa.Super. 94, 666 A.2d 327 (1995), *petition for allowance of appeal denied,* 544 Pa. 660, 676 A.2d 1200 (1996). The Mazurs have failed to state a claim for unjust enrichment because they have failed to prove that they conferred benefits on Northumberland County and/or UAE.

## ORDER

AND NOW, this 22nd day of April, 2004, the Order of the Northumberland County Court of Common Pleas at No. 1738, dated March 13, 2003, is affirmed.