923 A.2d 1099

CHANCEFORD AVIATION PROPERTIES, L.L.P.
and Chanceford Aviation, Inc., Appellants,

v.

CHANCEFORD TOWNSHIP BOARD
OF SUPERVISORS, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 7, 2005.

Decided May 31, 2007.

Stacey R. MacNeal, Esq., Michael Walter Flannelly, Esq., York, for Chanceford Aviation Properties, L.L.P and Chanceford Aviation.

Timothy J. Bupp, Esq., for Chanceford Township Board of Supervisors.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice EAKIN.

Appellants, Chanceford Aviation Properties, LLP and Chanceford Aviation, Inc., own five acres of land in Chanceford Township, York County, upon which a public airport[1] is situated. Appellants are successors in interest to the property's former owner, Loretta Baublitz. Baublitz brought a mandamus action asking the trial court to enter judgment against the Chanceford Township Board of Supervisors, directing the Township to enact a zoning ordinance in compliance with the Airport Zoning Act (AZA), 74 Pa.C.S. § 5911 *et seq.* The parties filed cross-motions for summary judgment; the trial court granted Baublitz's motion and directed the Township to enact such an ordinance. The Commonwealth

---

1. The Aviation Code, 74 Pa.C.S. § 5101 *et seq.*, defines "public airport" as "[a]n airport which is either publicly or privately owned and which is open to the public." 74 Pa.C.S. § 5102. It further defines "airport" as:

   Any area of land or water which is used, or intended to be used, for the landing and takeoff of aircraft and any appurtenant areas which are used, or intended to be used, for airport buildings or air navigation facilities or rights-of-way, together with all airport buildings and facilities thereon. Unless indicated otherwise, airport shall include heliports and public airports.

   *Id.*

Court reversed the trial court's order. For the following reasons, we reverse the Commonwealth Court.

Loretta Baublitz's late husband, Levere, owned and operated a private airport prior to the Township's adoption of a zoning ordinance in 1979. R.R., at 61a. In the early 1980s, Mr. Baublitz received a public airport license from the Pennsylvania Department of Transportation, Bureau of Aviation (PennDOT). *Id.* The legislature enacted the AZA in 1984. *See* 74 Pa.C.S. § 5911 *et seq.* In 1985, every township with a public airport received notice of the AZA's requirements. R.R., at 76a. In 1991, Mr. Baublitz notified the Township of its obligation to adopt an airport hazard zoning ordinance, which he believed the AZA required. *Id.,* at 119a, 125a–26a. The Township discussed an airport hazard zoning ordinance at a number of meetings in 1993 and 1994, but no such ordinance was enacted. *Id.,* at 119a, 128a–30a.

Mr. Baublitz died in 2000, and the license expired since it was in his name only. *Id.,* at 65a. PennDOT, however, issued a "letter of continued operation" authorizing Loretta Baublitz to continue operating the airport. *Id.,* at 66a. PennDOT continues to extend that authorization. *See id.,* at 99a. In January, 2002, Baublitz requested the Township enact an airport hazard zoning ordinance in accordance with the AZA. *Id.,* at 27a. Such an ordinance was discussed at a number of meetings of the Township's Board of Supervisors. The minutes of the January 13, 2003 meeting reflect that airport hazard zoning was discussed, and the Township solicitor stated he and his predecessor discussed the matter, and his predecessor stated unless the airport's owner wanted to bring a mandamus action, the topic should not be approached. *Id.,* at 29a, 120a. Notwithstanding that statement, airport hazard zoning was discussed in subsequent Board meetings during 2003; however, no such ordinance was adopted. *Id.,* at 30a–44a.

In July, 2003, Baublitz filed a complaint requesting the trial court enter a mandamus judgment in her favor directing the Township "to enact a zoning ordinance in compliance with the [AZA], within the shortest time frame permitted by laws

governing municipalities and the [AZA]." Complaint, 7/22/03, at 3. The parties filed cross-motions for summary judgment; the trial court denied the Township's motion and granted Baublitz's motion, directing the Township "to enact appropriate airport hazard zoning as required by, and consistent with, the [AZA], within six (6) months of the date of [the] order." Trial Court Order, 4/1/04. In reaching its decision, the trial court examined § 5912(a) of the AZA, which provides:

§ 5912. *Power to adopt airport zoning regulations*

(a) *General rule.*—In order to prevent the creation or establishment of airport hazards, every municipality having an airport hazard area within its territorial limits *shall* adopt, administer and enforce, under the police power and in the manner and upon the conditions prescribed in this subchapter and in applicable zoning law unless clearly inconsistent with this subchapter, airport zoning regulations for such airport hazard area. The regulations *may* divide the area into zones and, within the zones, specify the land uses permitted and regulate and restrict the height to which structures may be erected or objects of natural growth may be allowed to grow. A municipality which includes an airport hazard area created by the location of a public airport is required to adopt, administer and enforce zoning ordinances pursuant to this subchapter if the existing comprehensive zoning ordinance for the municipality does not provide for the land uses permitted and regulate and restrict the height to which structures may be erected or objects of natural growth may be allowed to grow in an airport hazard area.

74 Pa.C.S. § 5912(a)(emphasis added). The court found "shall" in the first sentence of the statute to be mandatory. Trial Court Opinion, 4/1/04, at 11. It found the legislature used "may" to grant townships discretion as to the content of the ordinances they enact. *Id.*, at 13. The court also found the third sentence "requires Townships with airport hazard areas to enact and enforce airport hazard zoning, if its current zoning does not provide for the land uses permitted and regulate and restrict the height to which structures may be

erected or objects of natural growth may be allowed to grow." *Id.* The court determined § 5912(a) requires townships with public airports to enact reasonable and necessary airport hazard zoning, but that the content of such ordinances are at the township's discretion, so long as the ordinances meet the legislature's goals and objectives. *Id.*, at 14. The court further determined mandamus was appropriate to compel the Township to comply with § 5912(a). *Id.*, at 7.

The Township appealed. The Commonwealth Court reversed, concluding the AZA does not mandate that "the Township adopt a model airport hazard zoning ordinance that will result in a servitude being imposed on the properties of hundreds of landowners and thousands of acres of property, potentially at the Township's expense, all to favor the owner of a single, privately owned five-acre tract of land." *Baublitz v. Chanceford Township Board of Supervisors,* 865 A.2d 975, 979 (Pa.Cmwlth.2005). The court noted § 5912's title is "[p]ower to adopt airport zoning regulations"; thus, it concluded § 5912(a) is a grant of power, not a legislative mandate. *Id.*, at 978. The court observed that under § 5915(c) of the AZA, "a municipality 'shall adopt, either in full or by reference, any provision of any model zoning ordinance *or* other similar guidelines suggested or published by the [Federal Aviation Administration] regarding airport hazard areas.' " *Id.* (emphasis added by Commonwealth Court) (quoting 74 Pa.C.S. § 5915(c)). The court stated § 411 of the Township's Zoning Ordinance contains a provision prohibiting flight obstructions, and a provision incorporating, by reference, FAA and Penn-DOT standards; therefore, the court concluded, since § 411 incorporates FAA guidelines, it is sufficient to comply with § 5915(c)'s mandate. *Id.*, at 978. Finally, the court reasoned that "[l]anguage is regarded as 'mandatory' when it is the 'essence of the thing required,' " *id.* (citing *Dubin v. County of Northumberland,* 847 A.2d 769, 772 (Pa.Cmwlth.2004)), and § 411 of the Township's Zoning Ordinance fulfills the essence of the thing to be done by the AZA—prevent the creation or establishment of airport hazards. *Id.*

Baublitz filed a Petition for Allowance of Appeal, which we granted. Prior to argument, appellants filed an Application for Relief for Substitution of Parties Pursuant to Pa.R.A.P. 502(b), requesting this Court to substitute them for Baublitz. The application was granted.

An appellate court may reverse the grant of a motion for summary judgment if there has been an error of law or an abuse of discretion. *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 812 A.2d 1218, 1221 (2002). Since the issue as to whether there are no genuine issues as to any material fact presents a question of law, our standard of review is *de novo*; thus, we need not defer to the determinations made by the lower tribunals. Our scope of review, to the extent necessary to resolve the legal question before us, is plenary. *Buffalo Township v. Jones*, 571 Pa. 637, 813 A.2d 659, 664 n. 4 (2002). We must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Ertel v. Patriot–News Company*, 544 Pa. 93, 674 A.2d 1038, 1041 (1996) (citing *Pennsylvania State University v. County of Centre*, 532 Pa. 142, 615 A.2d 303, 304 (1992)).

Appellants separate their argument into three sections: whether the AZA mandates the Township enact an airport zoning ordinance; whether § 411 of the Township Zoning Ordinance meets the AZA's requirements; and whether mandamus can compel a local municipality to enact an ordinance mandated by the legislature.

Whether the AZA mandates the Township to enact a zoning ordinance is a question of statutory construction. The purpose of the interpretation and construction of statutes is to ascertain and effectuate the legislature's intent. 1 Pa.C.S. § 1921(a). In construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...." *Id.*, § 1903(a). "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indica-

tion of legislative intent." *Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.)*, 575 Pa.66, 834 A.2d 524, 531 (2003) (citing *Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84, 87 (1995)). It is only when the statute's words are not explicit that the legislature's intent may be ascertained by considering the factors provided in 1 Pa.C.S. § 1921(c).[2]

The word "shall" by definition is mandatory, and it is generally applied as such. *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 696 A.2d 148, 150 (1997). However, the context in which "shall" is used may leave its precise meaning in doubt. *See Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures)*, 585 Pa. 366, 888 A.2d 758, 764–65 (2005); *see also In re Canvass of Absentee Ballots of November 4, 2003 General Election*, 577 Pa. 231, 843 A.2d 1223, 1231–32 (citations omitted) ("Although some contexts may leave the precise meaning of the word 'shall' in doubt . . . this Court has repeatedly recognized the unambiguous meaning of the word in most contexts."). When the context in which "shall" is used creates ambiguity, this Court has used the factors in § 1921(c) to ascertain the legislature's intent. *See Gardner*, at 765. This Court, however, has "recognized that the term 'shall' is mandatory for purposes of statutory construction when a statute is unambiguous." *Koken v. Reliance Insurance Company*, 586 Pa. 269, 893 A.2d 70, 81 (2006) (citations omitted).

Appellants argue the requirements of the AZA are mandatory, not directory. They contend the AZA, and specifically the term "shall" in § 5912(a), is clear and unambiguous.

**2.** The factors in § 1921(c) are:
(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.
1 Pa.C.S. § 1921(c).

Appellants argue that even assuming § 5912(a) is subject to interpretation, the term "shall" is mandatory since, among other reasons, such an interpretation is in accord with the statute's primary purpose of preventing airport hazards, and "shall" replaced the former statute's use of "may."

The Township asserts the Commonwealth Court's review of the AZA properly considered the Act in its entirety, the Act's nature and objective, and the consequences of its construction, and correctly concluded "shall" is directory rather than mandatory. It argues the effects on Chanceford Township and other municipalities of interpreting the AZA as mandatory indicate the legislature intended the Act to be a directory grant of authority, not mandatory. It asserts mandatory adoption of the model ordinance will affect thousands of acres of property in favor of a single five-acre parcel of property, and such is not in accord with the Act's mandate that regulations adopted under it be reasonable. Township's Brief, at 11–12 (citing § 5915(a)). It also argues mandatory adoption would have far-reaching effects, as 80% of municipalities in the Commonwealth with airport zones have not adopted airport hazard zoning. The Township anticipates that if the "shall" in § 5912 is interpreted as mandatory, Chanceford Township, as well as other municipalities, will be subjected to *de facto* takings claims and may be required to compensate landowners for their property rights.

The Pennsylvania State Association of Township Supervisors (PSATS) filed an *amicus curiae* brief, asserting because the AZA is ambiguous, statutory interpretation tools must be used to determine the legislature's intent. It asserts the statute's ambiguity is created by the legislature's use of both mandatory and permissive language. It further asserts that reading the AZA as a whole suggests the legislature intended § 5912(a) to create a discretionary power in local government, not a mandatory function. PSATS argues § 5912(a)'s ambiguity must be resolved by looking outside of its plain language.

The first sentence of § 5912(a) states:

In order to prevent the creation or establishment of airport hazards, every municipality having an airport hazard area within its territorial limits *shall* adopt, administer and enforce, under the police power and in the manner and upon the conditions prescribed in this subchapter and in applicable zoning law unless clearly inconsistent with this subchapter, airport zoning regulations for such airport hazard area.

74 Pa.C.S. § 5912(a) (emphasis added). This sentence clearly provides the legislature's purpose in enacting this statute—preventing the creation or establishment of airport hazards.[3] It also clearly states that every municipality having an airport hazard area *shall* adopt, administer, and enforce airport zoning regulations for such an area. The second sentence of § 5912(a) states: "The regulations *may* divide the area into zones and, within the zones, specify the land uses permitted and regulate and restrict the height to which structures may be erected or objects of natural growth may be allowed to grow." *Id.* (emphasis added). This sentence permits municipalities to exercise discretion over the content of the zoning ordinance required by the preceding sentence. The third sentence of § 5912(a) states:

A municipality which includes an airport hazard area created by the location of a public airport is *required* to adopt, administer and enforce zoning ordinances pursuant to this subchapter if the existing comprehensive zoning ordinance for the municipality does not provide for the land uses permitted and regulate and restrict the height to which structures may be erected or objects of natural growth may be allowed to grow in an airport hazard area.

*Id.* (emphasis added). This sentence requires a municipality with an airport hazard area to adopt, administer, and enforce airport zoning, if its zoning ordinance does not (1) provide for

---

3. The Aviation Code defines "airport hazard" as "[a]ny structure or object, natural or manmade, or use of land which obstructs the airspace required for flight of aircraft in landing or taking off at an airport or is otherwise hazardous to the landing or taking off of aircraft," and "airport hazard area" as "[a]ny area of land or water upon which an airport hazard might be established if not prevented as provided in this part." 74 Pa.C.S. § 5102.

the land uses permitted, and (2) regulate and restrict the height that structures may be erected or natural objects may be allowed to grow.

The plain language of § 5912(a) commands municipalities with airport hazard areas to enact and carry out airport zoning regulations. The legislature's use of the term "shall" clearly establishes that municipalities must comply with this mandate. Interpreting "shall" to be directory, rather than mandatory, would allow municipalities to freely disregard the statute, which would not serve the legislature's purpose of preventing airport hazards.

Neither the title of § 5912 nor the use of both mandatory and permissive language used in § 5912(a) creates ambiguity regarding whether the legislature intended to mandate the adoption of airport zoning regulations. The title of § 5912 is "Power to adopt airport zoning regulations." The Township asserts this title indicates a grant of power, not a legislative mandate. However, interpreting § 5912(a) as a grant of power would make the statute superfluous since 53 P.S. § 10603(b)(2)[4] already grants municipalities the authority to regulate and restrict the height and location of structures. See 1 Pa.C.S. § 1922(2) (legislature intends entire statute to be effective and certain). Additionally, the use of both mandatory and permissive language does not create ambiguity; rather, it allows municipalities to exercise discretion as to the content of the required ordinance. That discretion must be exercised within the confines of AZA, including § 5915. Accordingly, the Commonwealth Court erred in determining the AZA does not mandate the Township to enact an airport zoning ordinance.

---

4. Section 10603(b)(2) provides:
   (b) Zoning ordinances may permit, prohibit, regulate, restrict and determine:
   *   *   *
   (2) Size, height, bulk, location, erection, construction, repair, maintenance, alteration, razing, removal and use of structures.
53 P.S. § 10603(b)(2).

Next, appellants argue the Commonwealth Court committed an error of law in determining § 411 of the Chanceford Township Zoning Ordinance[5] complies with the AZA's requirements. Appellants contend § 411 does not fulfill the AZA's purpose of preventing the creation or establishment of airport hazards; rather, § 411 imposes zoning requirements on applicants who desire to use their properties as airports-it allows an airport to be operated as a special exception, provided specific conditions are met. Appellants assert this section applies only᾿ to the airports themselves, and thus does not impose any requirements on surrounding properties or implement AZA requirements throughout the Township.[6]

**5.** *Section 411 Airport*
Where indicated as permitted by special exception, this use is permitted subject to the following:
   a. Lot Area: ten (10) acres minimum.
   b. The approach zone to any of the proposed runway landing strips shall be in accordance with the regulations of applicable Federal and/or State agencies.
   c. There shall be no existing flight obstructions such as towers, chimneys or other tall structures or natural obstructions outside of the airport and located within the proposed approach zones.
   d. Any building, hanger or structure shall be located a sufficient distance away from the landing strip in accordance with the recommendations of applicable Federal and/or State agencies.
   e. Building heights in airport approach zones shall be limited to provide a clear glide path from the end of the usable landing strip. The glide path shall be a plane surface laid out in accordance with the operating characteristics of the aircraft for which the airport is designed. The first five hundred (500) feet of the glide path shall be wholly within the airport property.
   f. The facility must be permitted under applicable PAA and FAA regulations.
   g. If in the Conservation Zone or Agricultural Zone, the provisions of Sections 206.9 and 207.9 shall apply to the site location and to reduce the number of dwelling units permitted on the tract where the use is located.
R.R., at 205(a) (Chanceford Township Zoning Ordinance § 411).

**6.** Appellants assert § 411 is inapplicable to their property since the airport is a nonconforming use. Appellants' Brief, at 7. The Township responds, "[t]o the contrary, the provisions of Section 411 clearly do apply to [appellants]." Township's Brief, at 15. The parties do not rely on any authority in making this argument and do not sufficiently develop it for our review; thus, it will not be addressed.

The Township argues § 411 complies with the AZA's requirements since it incorporates FAA and PennDOT regulations. The Township contests appellants' assertion that § 411 does not impose requirements on surrounding properties, stating § 411(c), "prohibits 'existing flight obstructions such as towers, chimneys, or other tall structures or natural obstructions *outside of the airport and located within the proposed approach zones.*' " Township's Brief, at 15 (quoting § 411). PSATS adds § 411 regulates existing airports and the erection of structures on adjoining properties, as well as the creation of airports as special exceptions. Specifically, PSATS contends § 411 imposes requirements on adjoining property owners to limit the height of structures and growth in airport approach zones. PSATS's Brief, at 16 (citing § 411(d), (e)). Thus, since § 411 incorporates federal and state regulations, PSATS asserts the ordinance satisfies the provisions and purposes of the AZA.[7]

The clearly expressed purpose of the AZA is "to prevent the creation or establishment of airport hazards." *See* 74 Pa.C.S. § 5912(a). The legislature achieves this purpose by requiring every municipality with an airport hazard area to adopt, administer, and enforce airport zoning regulations for the airport hazard area. The AZA further provides "[a] municipality shall adopt, either in full or by reference, any provision of any model zoning ordinance or other similar guidelines suggested or published by the [FAA] regarding airport hazard areas." *Id.,* § 5915(c). While § 411 incorporates FAA guidelines, its scope does not extend beyond establishing conditions that must be met for an applicant to operate his property as an airport as a special exception. Section 411 does not provide for the land uses permitted, nor does it regulate and

---

7. The Township further argues appellants used § 411 for removal of airport hazards on neighboring properties. It asserts appellants "recently brought action in district justice court against one of its neighbors who erected a pole in violation of the fly zones. The neighbor subsequently removed the obstruction." Township's Brief, at 15. The Township, however, provides no authority to support this contention. In light of our conclusion that § 411 establishes conditions that must be met for an applicant to operate his property as an airport as a special exception, we need not address this argument.

restrict the height of structures and natural growth in an airport hazard area; rather, it dictates criteria that are required for a property to be operated as an airport.[8] Section 411 simply does not qualify as an attempt to regulate "airport hazard areas." *See* n. 3, *supra.* As such, the Commonwealth Court erred in determining § 411 is sufficient to comply with the AZA's requirements.

Third, appellants argue mandamus is appropriate to compel a municipality to enact an ordinance mandated by the legislature. "Mandamus is an extraordinary writ that will only lie to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other appropriate or adequate remedy." *Jackson v. Vaughn,* 565 Pa. 601, 777 A.2d 436, 438 (2001) (citation omitted). It may be used to compel performance of a ministerial duty, or to compel action in a matter involving judgment or discretion. *Pennsylvania Dental Association v. Commonwealth Insurance Department,* 512 Pa. 217, 516 A.2d 647, 652 (1986). However, it may not be used to direct the exercise of judgment or discretion in a particular way, or to direct the retraction or reversal of an action already taken. *Id.* "Mandamus is a device that is available in our system to compel a tribunal or administrative agency to act when that tribunal or agency has been 'sitting on its hands.'" *Id.*

Appellants assert mandamus is appropriate here because the legislature required the Township to enact an airport zoning ordinance consistent with the AZA. The Township argues mandamus is not appropriate because the AZA is a directory grant of power and not a legislative mandate. The Township argues it is outside the province of the judicial and executive branches to compel local legislative bodies to amend, repeal, and reenact their zoning ordinances since these legislative bodies may act, or not act, as they wish. Township's Brief, at 16 (citing *East Lampeter Township v. County of Lancaster,* 744 A.2d 359, 365 (Pa.Cmwlth.2000)).

---

**8.** The Township did not prove § 411 regulates airport hazard areas.

Here, § 5912(a) commands that municipalities with airport hazard areas enact and carry out airport zoning regulations. Since the Township has a public airport, and thus airport hazard areas, it must comply with the legislature's mandate. Hence, appellants have a clear right to have the Township enact airport zoning regulations in accordance with the AZA.

The Township further asserts mandamus is inappropriate since mandamus is appropriate only when refusal to perform an act or duty is clear, and not speculative. *Id.,* at 18 (quoting *Nason v. Commonwealth,* 90 Pa.Cmwlth. 130, 494 A.2d 499 (1985)). The Township asserts it never refused appellants' request for adoption of an airport zoning ordinance and, in fact, was "actively investigating the AZA's model ordinance and had discussed the ordinance at numerous public meetings." *Id.,* at 18. Appellants reply without citation to authority, but instead argue the Township clearly indicated its decision to not adopt an ordinance, pointing to the period of time the Township had notice of the requirement to adopt the ordinance. Appellants' Reply Brief, at 6–7. Appellants note the AZA was enacted in 1984, and every township with a public airport received notice of the AZA's requirements in 1985. *Id.* (citing R.R., at 50a). Further, appellants claim they notified the Township of its duty to adopt an airport zoning ordinance pursuant to the AZA in 1991, *id.* (citing R.R., at 119a, 125a), and again requested the Township enact an ordinance to comply with the AZA in 2002. *Id.* (citing R.R., at 119a, 131a). Appellants state although the Township studied the feasibility of adopting an ordinance from January, 2002, through the filing of the complaint in July, 2003, no ordinance has been adopted. *Id.* (citing R.R., at 121a, 123a).

While it does not appear the Township has formally refused to adopt an airport hazard zoning ordinance in compliance with AZA, it does appear the Township has been sitting on its hands. It is clear the Township has not adopted an airport zoning ordinance even though it has been aware of the AZA's requirements for over 20 years. Thus, in this case, common sense dictates that the Township's failure to comply with the AZA's requirements, of which it was on notice for two dec-

ades, in the face of appellants' repeated requests, is a clear indication of the Township's refusal to comply with its duty.

Finally, the Township argues appellants have means other than mandamus to gain control of airspace surrounding their property. It suggests appellants could obtain easements or purchase neighboring properties or the air rights to such properties in order to control the airspace. The Township contends appellants clearly have other means, but are attempting to "impose the burden and cost of controlling its airspace on the Township and its residents." Township's Brief, at 19. Appellants assert this argument is without merit because it assumes the owners of the neighboring properties will sell an easement or property rights. We agree with appellants. The mandamus action here is seeking to have the Township comply with the legislature's statutory mandate. No purchase of property rights could bring the Township into compliance with the AZA. Thus, mandamus is appropriate to compel the Township to comply with the AZA's mandate.

For the above reasons, the Order of the Commonwealth Court is reversed. Jurisdiction relinquished.

Former Justice NIGRO did not participate in the consideration or decision of this case.

Former Justice NEWMAN did not participate in the decision of this case.

Chief Justice CAPPY and Justice CASTILLE and BAER join the opinion.

Justice SAYLOR files a dissenting opinion.

Justice SAYLOR, dissenting.

For the reasons stated by the majority, I agree with its holding that the Commonwealth Court erred in its indication that the Airport Zoning Act ("AZA") is directory rather than mandatory. Nevertheless, I support the Commonwealth Court's conclusion that Section 411 of the Chanceford Township Zoning Ordinance, in its general application, is sufficient to comply with the terms of the AZA. *See Baublitz v. Chance-*

*ford Twp. Bd. of Supervisors,* 865 A.2d 975, 978–79 (Pa. Cmwlth.2005). Since I believe, however, that there is an issue concerning Section 411's applicability in the circumstances involved in the present case, I would remand to the Commonwealth Court for further consideration. My reasoning follows.

As the majority notes, the AZA requires an affected municipality to enact zoning regulations preventing the creation of airport hazards if its existing zoning ordinance does not already do so by providing for permitted land uses and restricting the height of objects and structures lying within airport hazard areas. Further, the statute requires that such municipalities adopt, in full or by reference, the provisions of model zoning ordinances or other similar guidelines set forth by the FAA related to airport hazards. *See* Majority Opinion, *op.* at 105, 923 A.2d at 1102.

For its part, Section 411 provides that an airport may be established by special exception within the Township, subject to certain conditions related to airport obstructions. *See* Majority Opinion, *op.* at 112 n. 5, 923 A.2d at 1106 n. 5. Among other things, the conditions set forth in Section 411 prohibit the existence of tall structures and natural objects lying outside the airport but within approach zones and mandate compliance with applicable FAA regulations. *See id.*

The majority reasons that, because Section 411's provisions merely establish the conditions that must be met by an applicant seeking to operate an airport as a special exception within the Township and do not place direct zoning restrictions on properties lying adjacent to permitted airports, their scope is too limited to satisfy the mandates of the AZA. Section 411, however, relates directly to the types of hazard that are the concern of the AZA—in keeping with the AZA, it provides for the land uses permitted in airport hazards areas, restricts the height of structures and objects in those areas, and incorporates FAA regulations.[1] As applied, Section 411

---

1. As the majority observes, the Aviation Code defines airport hazards as structures or objects which might obstruct or pose a hazard to the airspace required for the landing and taking off of aircraft, and de-

merely shifts the financial responsibility of insuring safe airport operations from the Township and neighboring landowners to the party seeking to establish an airport by special exception.[2] Significantly, once the conditions of Section 411 have been met by a landowner, the Pennsylvania Municipalities Planning Code, 53 P.S. §§ 10101–11202 ("MPC"), provides the Township with adequate mechanisms through which to enforce continued compliance.[3] For these reasons, Section 411 appears to me to be an adequate alternative to the enactment by the local governing body of zoning provisions limiting the use of neighboring properties.

Although I therefore differ with the majority's conclusions concerning the general effect of Section 411 and the outcome of this appeal to the degree that Section 411 applies, I would agree that the AZA does require the Township to enact additional zoning regulations aimed at preventing hazards that might affect the airport if Section 411 does not apply to regulate the use of Appellants' lands. In this regard, Appellants suggest that the airport is exempted from the zoning regulation as a prior nonconforming use.

Notably, the Township concedes in its brief that the airport was established prior to the enactment of the Ordinance in 1979, but suggests that it was not a public airport at that time, and thus, by implication, that the nonconforming use is limited to the airport's operations as a private facility. *See* Appellee's Brief at 1. Appellants, by contrast, claim that the airport has

scribes airport hazard areas as those locations where such hazards might be established. *See* Majority Opinion, *op.* at 110 n. 3, 923 A.2d at 1105 n. 3.

2. This might be accomplished by the landowner, for example, by restrictive covenant or conveyance of rights in air space above neighboring properties, *see* 68 P.S. § 801.

3. The violation of a condition attached to the grant of a special exception is the equivalent of a zoning violation and exposes the landowner to the imposition of both fines and equitable remedies under the MPC. *See, e.g., In Re Kreider,* 808 A.2d 340, 343 n. 6 (Pa.Cmwlth. 2002). Specifically, Section 617 of the MPC, 53 P.S. § 10617, grants municipalities the right to bring an equity action to enjoin zoning violations, while Section 617.2 of the MPC, 53 P.S. § 10617.2, provides that such a violation subjects the landowner to a civil fine of $500.00 per violation, plus court costs, including reasonable attorney's fees, with each day a violation continues constituting a separate violation.

been operated publicly since 1975. *See* Appellants' Brief at 7. The record, however, does not clearly resolve the issue, and, in fact, as the majority notes, the parties' briefs fail to address the matter with any particularity. *See* Majority Opinion, *op.* at 112 n. 6, 923 A.2d at 1107 n. 6.[4]

In terms of the disposition of the appeal, in my estimation it is significant that Appellants initiated the underlying proceedings through a mandamus action. It is well established that mandamus is an extraordinary remedy and that a writ of mandamus may only be issued where there is a clear legal right in the petitioner, a corresponding duty in the respondent, and a lack of any other appropriate remedy. *See McGriff v. Com. of Pennsylvania Bd. of Probation and Parole*, 809 A.2d 455, 458 (Pa.Cmwlth., 2002), *aff'd*, 575 Pa. 537, 838 A.2d 564 (2003). Furthermore, within the context of mandamus proceedings, "the burden of proof ... falls upon the party seeking the extraordinary remedy to establish his legal right to such relief." *Werner v. Zazyczny*, 545 Pa. 570, 578, 681 A.2d 1331, 1335 (1996). Under my rationale as described above, the characterization of Appellants' property as a prior non-conforming use is essential to the applicability of the AZA and, correspondingly, the availability of mandamus relief. Within this framework, I would remand for a determination concerning whether relief was available to either party in the procedural posture of this case (*i.e.*, on consideration of the parties' cross-motions for summary judgment).

**4.** An additional argument can be made that the airport remains a nonconforming use, whether it was operated as a private or a public facility upon enactment of the Township Zoning Ordinance. Under the "natural expansion" doctrine, the owner of a nonconforming business is permitted as a matter of right to expand the use, and "an overly technical assessment of [the] use cannot be utilized to stunt its natural development and growth." *Chartiers Tp. v. William H. Martin, Inc.*, 518 Pa. 181, 188, 542 A.2d 985, 988 (1988); *see also Limley v. Zoning Hearing Bd. Of Port Vue Borough*, 533 Pa. 340, 343, 625 A.2d 54, 55 (1993) (holding that the proposed conversion of a private club to a public restaurant would not constitute a change in use, but merely an expansion of the initial nonconforming use under the natural expansion doctrine, given that, pursuant to applicable zoning regulations, the initial nonconforming use consisted of the sale of food and beverages to customers as a primary activity of the private club, which activity would continue after the conversion).

Given that I would remand for further consideration, I respectfully dissent with regard to the majority disposition.