516 A.2d 647

**PENNSYLVANIA DENTAL ASSOCIATION, Appellant,**

v.

**COMMONWEALTH of Pennsylvania INSURANCE DEPART-
MENT and Medical Service Association of Pennsylvania
d/b/a Pennsylvania Blue Shield, Appellees.**

Supreme Court of Pennsylvania.

Argued May 15, 1986.

Decided Oct. 22, 1986.

Reargument Denied Jan. 5, 1987.

218

Thomas A. Beckley, Jeffrey W. Davis, John G. Milakovic, Harrisburg, for appellant.

Thomas E. Wood, Harrisburg, for appellee Pa. Blue Shield.

Sam Marshall, Harrisburg, for appellee Com. Ins. Dept.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Appellant, Pennsylvania Dental Association, is a nonprofit corporation existing under the laws of the Commonwealth of Pennsylvania. Its membership is comprised of over six thousand dentists located throughout Pennsylvania, and constitutes a substantial majority of the dentists licensed and practicing in the Commonwealth. Of this membership, approximately four thousand five hundred dentists are participants who have registered with Appellee, Medical Service Association of Pennsylvania, d/b/a Pennsylvania Blue Shield (hereinafter "Blue Shield").

Blue Shield, of course, is a professional health service corporation, organized and existing under Pennsylvania law. As such, it is regulated by the Professional Health Service Plan Corporations Act, 40 Pa.C.S. §§ 6301, *et seq.*, which is administered by Appellee, the Pennsylvania Insurance Department (hereinafter the "Department" or the "Insurance Department").

On December 21, 1983, Blue Shield submitted Filing No. 10–W–1983 to the Insurance Department. This filing essentially was composed of a letter requesting the Department's approval, pursuant to 40 Pa.C.S. § 6329, of a proposed adjustment to the "profiles" by which Blue Shield calculates payments to participants who render services to Blue Shield subscribers (patients). The filing specifically requested that the Department review and approve an increase of 5.5

per cent in total Blue Shield payments to participants based on the proposed adjustment to the "profiles."

On January 7, 1984, the Department published a notice of the filing and of opportunity to submit comments in the *Pennsylvania Bulletin,* pursuant to 40 Pa.C.S. § 6329(b) (relating to procedures for Department approval or refusal of payment applications). § 6329(b), in turn, incorporates procedural requirements set forth at 40 Pa.C.S. § 6102, subsections (c) through (f). *Inter alia,* subsection (e) requires a "reasonable opportunity for hearing, which shall be public." Subsection (f) generally makes Department orders with respect to such applications subject to judicial review. Under the relevant Insurance Department rules, set forth at 31 Pa. Code, and specifically, 31 Pa. Code § 56.1, the Department hearing scheduled and held in this case was governed by the General Rules of Administrative Practice and Procedure, 1 Pa. Code Part II (with certain exceptions not here relevant).

On behalf of its members who are dentists, Appellant initially sought the opportunity to review and study the statistical basis, if any, for Blue Shield's proposed payment revisions, and only thereafter, to be given the opportunity to submit its comments to the Department. Appellant was unable to do this, however, because the only information provided to it by the Department and Blue Shield was that which was contained in Blue Shield's relatively short application of December 21, 1983.

In a letter to the Department dated February 3, 1984, Appellant (sometimes referring to itself in the letter as "PDA") stated as follows:

> In its application to the Department, ... [Blue Shield] asserts that it is seeking approval of a proposed increase in the rates of payment for services performed by doctors for its subscribers because of a need to ensure that a sufficient number of doctors participate with Blue Shield. As ... a nonprofit corporation which counts several thousand Blue Shield participating doctors among its members, PDA has a considerable interest in seeing that the

action proposed by Blue Shield is in fact an increase in its rates of payment to doctors, and, if so, is adequate....

Unfortunately, Blue Shield's application does not include information sufficient to make a determination as to these matters. ... Blue Shield ... regularly generates documents which set forth the underlying rationale for actions such as the one it is presently proposing. *It seems impossible for the Department to make a reasoned determination on ... [Blue Shield's request] or for PDA to participate meaningfully in this proceeding unless Blue Shield is required to supplement its application by including these documents.*

Accordingly, on PDA's behalf we ... [request] that the Department ... require Blue Shield to so supplement its application and to produce for inspection by both the Department and ... [PDA] all documents ... relevant to Filing No. 10–W–1983.

(R. 18a–19a.) (Emphasis added.)

Appellant's letter of February 3, 1984, was accompanied by submission of a written Petition to Intervene in the administrative hearing scheduled for February 7, 1984. The Petition appears to have complied with the relevant rules governing intervention, 1 Pa. Code §§ 35.27–35.32. Appellant sought to intervene both to protect the interests of its member dentists and to protect its own interest as a purchaser of a Blue Shield plan for its employees. Appellant expressed concern as to whether the proposed rate increases were adequate and whether a proposed "freezing" technique used in Blue Shield's "profile" calculations was appropriate for dentists. Appellant claimed that it had the right, under the due process clauses of the United States and Pennsylvania Constitutions,[1] to insist that Blue Shield submit its underlying data to the Department, and that Appellant had the right to review such data before commenting on the proposed rate increases. At the public hearing held on Blue Shield's request, on February 7, 1984,

---

1. The Fourteenth Amendment to the United States Constitution and Article I, Sections 1 and 9 of the Pennsylvania Constitution.

Appellant, in a prepared statement, reiterated its two-fold objection concerning the need to have Blue Shield's underlying data submitted. While expressly taking no substantive position on the Blue Shield filing, Appellant orally repeated its request to intervene. The Department, through its Deputy Insurance Commissioner, who was presiding at the hearing, orally rejected Appellant's request to intervene on the theory that the hearing was informal in nature rather than being a formal one (R. 51a). By rejecting the petition to intervene, the Deputy Insurance Commissioner implicitly rejected Appellant's complaint that it had been given insufficient information in order to be able to file meaningful comments. The Deputy Commissioner also orally responded to the objection that the Department had obtained insufficient information to perform rationally its own duty to approve or disapprove the requested rate increase pursuant to 40 Pa.C.S. § 6329(b):

> ... [T]he position of the Department as to the detailed statistical information is that it is the duty, but also the prerogative of the Insurance Commissioner, to determine whether or not there is sufficient information in the filing for him to make a judgment on whether or not the filings can be approved....

(R. 51a–52a.)

At the hearing, representatives of the Department directed questions to Blue Shield representatives concerning the filing, and also entertained comments from other interested persons. When its petition to intervene was rejected, Appellant took no further part in the proceedings, although it could have done so.

On March 7, 1984, the Department, having delivered no further information to Appellant, approved Blue Shield's initial letter filing by allegedly rubber-stamping a copy of it with the Department's seal. Appellant was not immediately notified of this action approving the proposed rates. No written decision was issued. The payment methodology and rates were then implemented by Blue Shield, and are in effect currently.

Appellant's Petition for Review was filed with Commonwealth Court on May 3, 1984, (R. 2a) and invoked both that Court's appellate and original jurisdiction. Appellant sought Commonwealth Court review of the Insurance Department's approval of the rate increase requested by Blue Shield and also brought an original action for a writ of mandamus directing the Department to reverse or rescind its approval of Blue Shield's request for a rate increase, to conduct a "formal" hearing as to Blue Shield's request, and to obtain and consider the additional specific information and data underlying the request. In response, the Department and Blue Shield filed preliminary objections to the action for a writ of mandamus and a motion to quash the appeal.

Commonwealth Court first took up the preliminary objections to Appellant's action in mandamus and noted that a mandamus action was, in its view, an inappropriate vehicle to obtain rescission of a departmental decision, and that such a request was more appropriately addressed to that Court's appellate jurisdiction. Commonwealth Court, nevertheless, decided to consider the request for a writ of mandamus directing the Department to convene a formal hearing at which Appellant would be granted intervener status with concommitant power to request documents and other specific information.

Commonwealth Court reviewed the nature and scope of the mandamus action, considered the nature of Appellant's property interests, if any, affected by the Department's action, and specifically reviewed Appellant's entitlement to procedural due process and what that entails. After careful consideration of this Court's due process analysis in *Pennsylvania Coal Mining Association v. Insurance Department*, 471 Pa. 437, 370 A.2d 685 (1977), Commonwealth Court concluded that Appellant was afforded greater procedural due process than that deemed necessary to the Association similarly situated in *Pennsylvania Coal Mining Association, supra*, since Appellant here had reasonable notice of the proposed Blue Shield profile update, and an opportu-

nity to present its views and to question Blue Shield representatives concerning the filing, at a public hearing. Commonwealth Court held that Appellant failed to state a cause of action in mandamus because it had no clear legal right to intervener status at a formal hearing, and because the Insurance Department was under no duty to provide a formal hearing.

With respect to that portion of Appellant's Petition for Review which invoked Commonwealth Court's appellate jurisdiction, the Department and Blue Shield filed a motion to quash for failure to file the appeal within thirty days of the date the filing for the rate increase was approved. Commonwealth Court thought that at the root of the motion to quash for timeliness was the assumption (incorrect, as it were) that Appellant received timely notice of the Department's decision to approve the filing. Commonwealth Court thought that this assumption ignored the very question raised by the Petition for Review, *viz.*, is the nature of the Department's decision and Appellant's interest in the decision such that procedural due process safeguards mandate that Appellant be granted party status in the proceedings with a concommitant right to written notice of the Department's decision? Commonwealth Court concluded that Appellant was *not* entitled to party status and that, therefore, it would *not* have been entitled to (and, in fact, did not promptly receive) notice of the Department's decision; hence, the motion to quash for timeliness was determined to be inappropriate.

The Department and Blue Shield also included within their preliminary objections an objection to the "appeal" on the basis that Appellant lacked standing. Though inartfully drafted, the preliminary objection to standing was, in the interests of judicial efficiency and administration, treated by Commonwealth Court as a motion to quash for lack of standing. Commonwealth Court agreed that Appellant had no standing to appeal the approval of the profile update requested by Blue Shield, and granted the motion to quash. Commonwealth Court's view of the standing issue was

based on this Court's decision in *City of Pittsburgh v. Insurance Department of Pennsylvania*, 448 Pa. 466, 294 A.2d 892 (1972), where we determined that the City of Pittsburgh and the County of Allegheny (as consumers or representatives of consumers) were not sufficiently interested in the Department's consideration and approval of a rate filing by Blue Cross to be granted standing to challenge the nature of the proceedings conducted by the Department. Commonwealth Court did not discuss the applicability of our more recent decision on standing in *William Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975).

Appellant appealed to this Court, as of right, Commonwealth Court's denial of Appellant's request for a writ of mandamus. This Court has mandatory appellate jurisdiction with respect to this determination under 42 Pa.C.S. § 723(a) relating to appeals from final orders of Commonwealth Court in matters commenced under that Court's original jurisdiction. In the briefs submitted, and the oral arguments heard before this Court, the parties to this appeal have also dealt with the standing issue determined by Commonwealth Court in that part of the case that invoked their appellate (rather than original) jurisdiction. To protect its position, Appellant also filed a separate Petition for Allocatur with respect to the standing issue, and its right to *appellate* review of its contentions in Commonwealth Court, at 292 M.D. Allocatur Docket 1985. Since this Court has been properly apprised of all the relevant issues herein, a separate proceeding with respect to the allocatur petition would be superfluous and would needlessly consume the time of all concerned. We have, hence, decided to dispose of the claims raised by Appellant in the instant Opinion and Order, and this Opinion and Order therefore constitutes a concurrent grant of Appellant's allocatur petition for this purpose.

Commonwealth Court's decision denying relief to Appellant must be sustained but for the reasons set forth below.

### I.

### MANDAMUS

We think that Commonwealth Court properly denied Appellant's request for a writ of mandamus. This Court has consistently held that mandamus is an extraordinary writ which will only lie to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other appropriate and adequate remedy. See, *Delaware River Port Authority v. Thornburgh*, 508 Pa. 11, 493 A.2d 1351 (1985); *County of Allegheny v. Commonwealth*, 507 Pa. 360, 490 A.2d 402 (1985); *Equitable Gas Co. v. City of Pittsburgh*, 507 Pa. 53, 488 A.2d 270 (1985).[2]

 While this Court has said that mandamus will not lie to compel discretionary acts, *Bronson v. Comm. Board of Probation and Parole*, 491 Pa. 549, 421 A.2d 1021 (1980), *cert. denied, sub. nom., Pennsylvania Board of Probation and Parole v. Bronson*, 450 U.S. 1050, 101 S.Ct. 1771, 68 L.Ed.2d 247 (1980); *Rylke v. Portage Area School District*, 473 Pa. 481, 375 A.2d 692 (1977), this has usually been interpreted to mean that while a court may direct that discretion be exercised, it may not specify *how* that discretion is to be exercised nor require the performance of a particular discretionary act. *Delaware River Port Authority v. Thornburgh, supra; Philadelphia Newspapers, Inc. v. Jerome*, 478 Pa. 484, 387 A.2d 425, appeal dismissed 443 U.S. 913, 99 S.Ct. 3104, 61 L.Ed.2d 877 (1978). The writ cannot be used to control the exercise of discretion or judgment by a public official or administrative or judicial tribunal; to review or compel the undoing of an action taken by such an official or tribunal in good faith and in the exercise of legitimate jurisdiction, even though the decision was wrong; to influence or coerce a particular determination of the issue involved; or to perform the function of an

---

2. The latter two cases cite numerous earlier decisions of this Court to the same effect.

appeal or writ of error. *Land Holding Corp. v. Board of Finance and Review*, 388 Pa. 61, 130 A.2d 700 (1957); see also, *Kaufman Constr. Co. v. Holcomb*, 357 Pa. 514, 55 A.2d 534, 174 A.L.R. 189 (1947). We have indicated that the writ should not be granted in doubtful cases, and that it entails the application of equitable principles by the court asked to issue the writ. *Francis v. Corleto*, 418 Pa. 417, 211 A.2d 503 (1965).

In short, mandamus is chiefly employed to compel the performance (when refused) of a ministerial duty, or to compel action (when refused) in matters involving judgment and discretion. It is not used to direct the exercise of judgment or discretion in a particular way, nor to direct the retraction or reversal of an action already taken. See, *Wilbur v. United States ex rel. Kadrie*, 281 U.S. 206, 50 S.Ct. 320, 74 L.Ed. 809 (1930). Mandamus is a device that is available in our system to compel a tribunal or administrative agency to act when that tribunal or agency has been "sitting on its hands." It must not be turned into a general writ of error or writ of review lest we further encourage interlocutory and piecemeal appellate review, or multiple appeals with their attendant burdens and delays.

■ Here, Petitioner was clearly eligible to intervene under 1 Pa. Code § 35.28(a)(2),[3] and the Insurance Depart-

---

**3.** 1 Pa.Code § 35.28, *Eligibility to Intervene*, provides:

(a) *Persons.* A petition to intervene may be filed by any person claiming a right to intervene or an interest of such nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought. Such right or interest may be any one of the following:

(1) A right conferred by statute of the United States or of this Commonwealth.

(2) An interest which may be directly affected and which is not adequately represented by existing parties, and as to which petitioners may be bound by the action of the agency in the proceeding. The following may have such an interest: consumers, customers, or other patrons served by the applicant or respondent; holders of securities of the applicant or respondent; employes of the applicant or respondent; competitors of the applicant or respondent.

(3) Any other interest of such nature that participation of the petitioner may be in the public interest.

ment "acted" under 1 Pa. Code § 35.31(b) when it ruled on and denied Appellant's petition to intervene. (The Department also "acted" when it denied Appellant the data it had requested and hence went ahead with the hearing and ruled on Blue Shield's rate increase without explicit reference to said data.) Obviously, the Insurance Department acted in a way which Appellant did not like, but broadly speaking, the Department did not fail to act either in carrying out its mandatory duties (specifically, to hold a hearing and rule on the rate increase) or in exercising its judgment and discretion with respect to the issues and requests directly presented to it by Appellant in the form of filing the petition to intervene. Granting or denying a petition to intervene is, of course, within the sound discretion of the agency involved. See, *W.J. Dillner Transfer Co. v. Pa. Public Utility Commission,* 175 Pa.Superior Ct. 461, 107 A.2d 159, appeal dismissed, 349 U.S. 903, 75 S.Ct. 580, 99 L.Ed. 1240 (1954). Granting mandamus here would merely be an unnecessary substitute for judicial review of the Department order denying intervention, which review was expressly available to Appellant (or would have been had Appellant's appeal been timely). Commonwealth Court's order dismissing Appellant's mandamus action was, therefore, correct.

## II.

## INTERVENTION

As noted above, Appellant sought to intervene in the Insurance Department's advertised hearing (scheduled and held on February 7, 1984), by filing a written petition with the Department which was dated February 3, 1984, (see, R. 18a–27a). Appellant's petition to intervene was essentially for the purpose of moving the Department to require Blue Shield to submit to the Department all the underlying documents, studies and data supporting its proposed rate changes, and to give Appellant the opportunity to review

(b) *Commonwealth.* The Commonwealth or any officer or agency thereof may intervene as of right in any proceeding subject to the provisions of this part.

such material before offering its own comments on the rate changes. Appellant's petition to intervene was orally denied at the hearing held on February 7, 1984, by the Deputy Insurance Commissioner, on the grounds that the hearing was informal in nature (see, R. 51a–52a). Appellant filed its petition for review with Commonwealth Court on May 3, 1984, (see, R. 2a), well over thirty days from the date Appellant's petition to intervene had been expressly denied by the Insurance Department at an open public hearing. We think that under the relevant rules, Petitioner was obligated to file its appeal within thirty days from the date its petition to intervene was denied (February 7, 1984), and that failure to do so deprives both this Court and Commonwealth Court of jurisdiction to hear this appeal on the merits.

Pa.Rule of Appellate Procedure 1512(a)(1) provides:

(a) Appeal authorized by law. Except as otherwise prescribed by Subdivision (b) of this rule:

(1) A petition for review of a quasijudicial order, or an order appealable under 42 Pa.C.S. § 763(b) (awards of arbitrators) or under any other provision of law, shall be filed with the prothonotary of the appellate court within 30 days after the entry of the order.

Pa.Rule of Appellate Procedure 102 defines "quasijudicial order" as follows:

An order of a government unit, made after notice and opportunity for hearing, which is by law reviewable solely upon the record made before the government unit, and not upon a record made in whole or in part before the reviewing court.

Under Pa. Rule of Appellate Procedure 102, "order" is defined as follows:

Includes judgment, decision, decree, sentence and adjudication.

Periods of time set for filing appeals are jurisdictional. See, *Miller v. Com. Unemployment Compensation Board of Review*, 505 Pa. 8, 476 A.2d 364 (1984). Although the

parties did not raise or address this problem, we are obligated to raise the matter on our own motion *sua sponte,* and we hereby do so.

As noted above, 31 Pa. Code § 56.1 makes most of the General Rules of Administrative Practice and Procedure, 1 Pa. Code Part II, applicable to the instant hearing conducted by the Insurance Department. 1 Pa. Code § 31.3 sets out a number of definitions of which three are critical for our purposes:

*Interveners:* Persons intervening or petitioning to intervene as provided by §§ 35.27–35.31 (relating to intervention), when admitted as a participant to a proceeding. Admission as an intervener shall not be construed as recognition by the agency that such intervener has a direct interest in the proceeding or might be aggrieved by any order of the agency in such proceeding.

*Matter or proceeding* as: The elucidation of the relevant facts and applicable law, consideration thereof, and action thereupon by the agency with respect to a particular subject within the jurisdiction of the agency, initiated by a filing or submittal or an agency notice or order.

*Submittal* as: Any application, amendment, exhibit, or other similar document filed in an *ex parte* or other nonadversary proceeding.

It is clear that the hearing here at issue was a "proceeding" under these rules, and that it was therefore proper for Appellant to seek intervention in this "proceeding." The definitions cited above do not limit "proceeding" to mean what has variously been called an adjudicatory, adversarial, or trial-type hearing. Appellant was eligible to intervene under 1 Pa. Code § 35.25(a)(2), set forth at footnote 3 above, since it clearly represents "consumers, customers, or other patrons served by the applicant [Blue Shield]." Under this section on eligibility, we think it is also clear that Appellant had standing at least to *request* intervener status, and to appeal when that request was denied. Under the express language of 1 Pa. Code § 35.31(b), the Department would have had the option of

authorizing "limited participation" in the hearing to Appellant with respect to Appellant's specific requests, but the Department declined to so rule. Therefore, *all* the procedures and relief demanded by Appellant in this appeal were expressly rejected when the request to intervene as a party was denied. Appellant would be given none of the data or documentation it demanded prior to making comments, and the Department made it clear that it would not deem itself bound to consider such data or documentation if such existed. We can conceive of no ruling or order that could have been more "final" with respect to Appellant than this one. Appellant was left with the right any other member of the public would have to observe and to make comments based on the information available to the public generally (which it declined to do).

Pa.Rule of Appellate Procedure 108(a)(1) provides:

(1) Except as otherwise prescribed in this rule, in computing any period of time under these rules involving the date of entry of an order by a court or other government unit, the day of entry shall be the day the clerk of the court or the office of the government unit mails or delivers copies of the order to the parties, or if such delivery is not otherwise required by law, the day the clerk or office of the government unit makes such copies public. The day of entry of an order may be the day of its adoption by the court or other government unit, or any subsequent day, as required by the actual circumstances.

While no *written* order was entered, we think that none could have been required or expected under the "actual circumstances" of what was clearly commenced as an informal or legislative type hearing. The hearing officer expressly denied all of Appellant's requests, and did so at a public hearing at which a stenographic record was kept, and in direct response to an oral request made by one of Appellant's attorneys with respect to a written petition already filed. The order was, hence, adopted by the Department on February 7, 1984, under Pa.R.App.P. § 108.

The decision was final because it had the effect of putting Appellant "out-of-court" as it were, at least in the administrative context, and it had the effect of depriving the litigant of its "day in court" with respect to every contested issue. *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 383 A.2d 791 (1977). An order is "final" if it precludes a party from presenting the merits of its claim to a lower court (or tribunal). *Pugar v. Greco,* 483 Pa. 68, 394 A.2d 542 (1978).

For the reasons set forth above, we affirm Commonwealth Court's denial of Appellant's request for a writ of mandamus and otherwise quash this appeal for lack of jurisdiction under Pa. Rule of Appellate Procedure 1512(a)(1).

HUTCHINSON and ZAPPALA, JJ., concur in the result.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent. Mandamus should be available to appellant in this case. The Department of Insurance had the duty to afford the Pennsylvania Dental Association a reasonable opportunity to submit written comments, pursuant to 40 Pa.C.S. § 6329(b). By denying access to the data requested by the Pennsylvania Dental Association, the Department of Insurance rendered the right of reasonable opportunity to comment under the statute illusory. The right to notice and an opportunity to be heard "must be granted at a reasonable time and in a reasonable manner." *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556, 570 (1972) (citations omitted). Without access to any of the information serving as a basis for Blue Shield's payment application, the Pennsylvania Dental Association could in no real way comment meaningfully. Comments in the abstract are irrelevant to a defense to a rate increase.

The fact that the Pennsylvania Dental Association did not appeal the denial of its petition to intervene is of no moment. It was not necessary for appellant to intervene in

order to protect its rights under the statute. Therefore, appellant is not required to appeal the denial of its petition to intervene. The only real avenue of relief for the Pennsylvania Dental Association would be in mandamus.