David **ADAMS** and Rose Frontino, By Josephine Meichur and Marie Richards with Power of Attorney, **Petitioners**

v.

**DEPARTMENT OF HEALTH, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 11, 2008.

Decided March 20, 2009.

---

Bruce M. Ludwig, Philadelphia, for petitioners.

Kenneth M. Kolaski and Karl A. Thallner, Jr., Philadelphia, for intervenor, Manor Care, Inc.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

David Adams and Rose Frontino [1] (Residents) seek this Court's appellate review of the Department of Health's refusal to allow them to intervene in the Department's consideration of a change in ownership of a chain of nursing homes, some of which are licensed by the Department. Residents lived in two different Pennsylvania nursing homes affected by the change in ownership. In support of their petitions to intervene, Residents asserted that they had an interest in the regulatory issue before the Department by virtue of the fact they were "customers" of two affected nursing homes. The Department's review of a corporate reorganization of a chain of nursing homes is not a "proceeding" amenable to petitions to intervene and the denial of Residents' petitions was an interlocutory order that is not reviewable in this Court's appellate jurisdiction. Accordingly, we quash Residents' appeal.

Manor Care, Inc. is one of the nation's largest providers of nursing home services, with facilities in thirty states that provide skilled nursing services and rehabilitation treatment. In 2007, Manor Care's publicly-traded shares of stock were purchased by the Carlyle Group, a private equity firm. The transaction required numerous regulatory approvals, including one from Pennsylvania. Manor Care's 46 facilities in Pennsylvania are licensed and regulated under the Health Care Facilities Act, Act of July 19, 1979, P.L. 130, *as amended,* 35 P.S. §§ 448.101–448.904b, and this Act required a change in ownership application

---

1. Petitioner Rose Frontino's daughters, Josephine Miechur and Marie Richards, bring this action on her behalf.

(CHOW Application) for each of Manor Care's Pennsylvania facilities.

On November 19, 2007, Residents each submitted a petition to intervene in the Department's review of Manor Care's CHOW Applications, invoking the intervention provisions of the General Rules of Administrative Practice and Procedure (General Rules), 1 Pa.Code §§ 35.27–35.32. Residents asserted that as residents of Manor Care long-term care facilities, they had standing to intervene lest the corporate reorganization "impact the quality of care" at those facilities. Reproduced Record at 3a, 9a (R.R. ___).[2] In their petitions to intervene, Residents asserted the following "disputed issues of fact":

1. Whether the license applicant(s) will be able to fulfill their statutory duties to provide facilities that are adequately constructed, equipped and maintained, and safely and efficiently operated;

2. Whether the license applicant(s) will be able to fulfill their statutory duties to provide facilities that will provide safe and efficient services adequate for the care and treatment of patients or residents;

3. Whether the license applicant(s) will be able to fulfill their statutory duties to provide facilities that meet quality standards;

4. Whether the license applicant(s) will be able to fulfill their statutory duties to provide facilities that afford residents humane, courteous and dignified treatment;

5. Whether the license applicant(s) will be able to fulfill their statutory duties to provide facilities that have sufficient numbers of qualified, trained staff for the residents of the facilities;

6. Whether the license applicant(s) will be able to fulfill their statutory duties to provide facilities that have plans for quality assurance and risk management;

7. Whether the license applicant(s) meet the requirements of the Commonwealth regarding contingency financing and sufficient proof of funding for contingency and working capital requirements to fulfill the legal rights of its residents;

8. Whether the license applicant(s) meet financing requirements of the Commonwealth and, in light of the substantial purchase price paid and the resulting cost of capital required by the purchase, can operate and provide services as required by law.

R.R. 3a–4a, 9a–10a (footnote omitted). Residents asserted that Manor Care did not provide the Department with information sufficient to determine whether their nursing homes would continue to meet Pennsylvania licensing standards after the buyout.[3]

Manor Care moved to dismiss Residents' petitions to intervene, contending that the Department's review of the CHOW Applications was not a "proceeding" within the meaning of the General Rules. Manor Care also argued that Residents' interests were adequately represented by the Department and that Residents' petitions to intervene did not

---

2. Petitioner Rose Frontino is a resident of ManorCare Easton in Easton, Pennsylvania. Petitioner David Adams was a resident of Manor Care's Shadyside Nursing and Rehab Center in Pittsburgh. Adams was discharged from Shadyside on April 15, 2008.

3. Because Residents did not have access to Manor Care's CHOW Applications, it is not known how Residents could make the claim that Manor Care had not provided enough information.

satisfy the form and content requirements set forth in 1 Pa.Code § 35.29.[4] In response, Residents reiterated their claim that, as "customers" of Manor Care, they had a direct interest in the Department's regulatory review of Manor Care's corporate reorganization and demanded that the Department stay action on the CHOW Applications until Residents' petitions to intervene were resolved.

The Department, by Robert Torres, Deputy Secretary for Administration, responded to Residents' petitions to intervene. In Torres' letter of December 14, 2007, the Department noted that the "disputed issues of fact" were so lacking in specifics that they amounted to no more than conclusory recitals. In addition, the petitions did not cite a single statutory or regulatory provision relevant to the CHOW Applications. The Department acknowledged that Residents had not been allowed access to the CHOW Applications; nevertheless, the Department explained

> that a petition to intervene in the Department's consideration of a license ap-

plication [must] at least identify a specific statutory or regulatory requirement that an applicant does not satisfy and assert clearly and concisely the facts relied upon to support the assertion.

R.R. 97a. Concluding that Residents failed to meet the form and content requirements of a petition to intervene, the Department gave them until December 17, 2007, to resubmit their petitions to intervene.

On December 17, 2007, Residents filed amended petitions to intervene that were identical to their original petitions except that they contained additional "Factual Allegations." These new factual allegations recited incidents of inadequate care that Residents had experienced during 2006 and 2007 at the Manor Care facilities where they resided.[5] Residents also submitted supplemental materials to the Department, which they characterized as "evidence or offers of proof" with respect to the disputed factual issues set forth in the amended petitions. R.R. 104a.[6]

---

**4.** Section 35.29 of the General Rules provides:

> Petitions to intervene shall set out clearly and concisely the facts from which the nature of the alleged right or interest of the petitioner can be determined, the grounds of the proposed intervention, and the position of the petitioner in the proceeding, so as fully and completely to advise the parties and the agency as to the specific issues of fact or law to be raised or controverted, by admitting, denying or otherwise answering, specifically and in detail, each material allegation of fact or law asserted in the proceeding, and citing by appropriate reference the statutory provisions or other authority relied on.

1 Pa.Code § 35.29.

**5.** Rose Frontino alleged that there were a "number of incidents ... which affect the quality of care she is receiving at ManorCare Easton." R.R. 153a. These included admission to the hospital in November 2006 for a bowel obstruction; unexplained bruises on

her shoulder and foot in July 2007; and insufficient toileting assistance on several occasions in late 2007. R.R. 153a–154a. Similarly, with respect to Manor Care Shadyside, David Adams alleged that he developed infections in his leg because his dressings on a wound had not been changed daily in accordance with his physician's instructions. R.R. 158a. Adams also averred that there was a high turnover in staff at Shadyside that directly impacted the quality and efficiency of care provided to him and other residents. R.R. 158a–159a. Finally, Adams recounted his testimony on November 13, 2007, before the Pennsylvania House of Representatives' Aging and Older Adult Services Committee raising concerns about the quality of care at Shadyside and the possible impact of a change in ownership on care and staffing. R.R. 159a.

**6.** Residents submitted the following supplemental materials:

1. Adams' November 13, 2007, testimony before the Pennsylvania House of Representa-

That same day, the Department issued its "Final Response," again denying Residents' petitions to intervene. The Department explained:

> With respect to the supplemental information submitted by [Residents], the documentation attached to your December 17, 2007 letter is already available to the Department and has been considered by it in its review of the license applications. Further, *the "Factual Allegations" in the Amended Petitions are at best complaints regarding the current level of care provided at the relevant facilities and have insufficient bearing on whether the applicants for licensure meet the statutory or regulatory requirements for licensure.* For those reasons, [the Department finds] that [Residents] have failed to aver sufficient facts to permit intervention as required by 1 Pa.Code § 35.29.

R.R. 162a–163a (emphasis added). The Department also denied Residents' request to stay action on the CHOW Applications.

Also on December 17, 2007, the Department approved Manor Care's CHOW Applications for its Pennsylvania facilities. On December 19, 2007, Residents requested that the Department stay its approval pending judicial review of the Department's denial of their petitions to intervene. The Department denied a stay on December 21, 2007, and the transactions for the change in ownership of Manor Care's Pennsylvania facilities closed that same day. Residents now seek this Court's review of the Department's Final Response, which denied their petitions to intervene.

Before this Court, Residents raise one issue: whether the Department abused its discretion in denying their petitions to intervene. Residents ask the Court to reverse the Department's Final Response and remand the matter for a *de novo* review of the CHOW Applications with Residents' participation. The Department and Intervenor, Manor Care, Inc., raise two preliminary issues. They contend that this Court lacks subject matter jurisdiction to review the Department's Final Response because an order denying intervention is not an appealable order. Second, the Department and Manor Care argue that Residents' petition for review should be dismissed as moot.[7]

We agree with the Department and Manor Care that this is a case about jurisdiction. Residents have invoked this Court's jurisdiction over "appeals from final orders of government agencies" conferred by the Judicial Code, 42 Pa.C.S. § 763(a). The Department and Manor Care counter that the denial of a petition for intervention is not a final order. They further contend that Residents cannot satisfy the strict requirements for allowing an

---

tives' Aging and Older Adult Services Committee;

2. An October 2007 publication by the Service Employees International Union entitled, "Who Wins, Who Loses? The Carlyle Group Buyout of HCR Manor Care: Impact on Pennsylvania;"

3. A written statement submitted on November 13, 2007, to the Pennsylvania House of Representatives' Aging and Older Adult Services Committee by Joe Angelelli, Ph.D., Pennsylvania State Director at PHI, a national non-profit organization that sponsors programs and activities aimed at strengthening the relationship between direct-care workers and long-term care consumers;

4. An article by Charles Duhigg published in the New York Times on September 23, 2007, entitled, "At Many Homes, More Profit and Less Nursing."

R.R. 104a.

7. Intervenor Manor Care, Inc. has also filed a motion to dismiss the present action for mootness. We need not consider this issue in light of our disposition on the threshold issue of subject matter jurisdiction.

appeal of an interlocutory or collateral order. For these reasons, the Department and Manor Care request this Court to quash Residents' appeal.

■ Before addressing the threshold jurisdictional issue, however, we consider Residents' theory of "intervention." Residents do not contemplate that upon remand, should one be granted, the Department will conduct a formal administrative hearing on the merits of the CHOW Applications. Rather, they contemplate a renewed staff review of the CHOW Applications. Residents, or their legal representatives, would participate in the Department's staff inspection of all documents related to the applications, such as financial exhibits, memoranda and correspondence, and be included in Department meetings where the applications are discussed among staff and with Manor Care. In effect, by their petitions to intervene, Residents seek to be appointed *ad hoc* bureaucrats, which is simply not authorized by the General Rules.

■ To begin with, an agency's power to exercise regulatory authority, substantively or procedurally, must be expressly conferred by the legislature. *Aetna Casualty and Surety Company v. Insurance Department,* 536 Pa. 105, 118, 638 A.2d 194, 200 (1994) (holding that an agency may exercise only those powers that have been conferred upon it in clear and unmistakable statutory language). Accordingly,

the Department cannot invite private citizens, who are customers of an applicant, to participate in the CHOW Application process without clear authority in the relevant implementing statute, in this case the Health Care Facilities Act. Residents have not offered any statutory authority in support of their request to be appointed *ad hoc* Department staff.

Residents do point to the General Rules, which expressly authorize intervention in an agency's "proceeding." 1 Pa.Code § 35.27. The General Rules also provide an expansive definition of "proceeding." 1 Pa.Code § 31.3.[8] Further, Residents argue that the Supreme Court's holding in *Pennsylvania Dental Association v. Insurance Department,* 512 Pa. 217, 516 A.2d 647 (1986), supports their contention that the Department's review of a CHOW Application is a "proceeding" in which they, as Manor Care customers, may participate as intervenors. Residents' reliance upon this precedent is misplaced.

*Pennsylvania Dental Association* involved the right of dentists, members of the association, to intervene in the Insurance Department's informal hearing on a request by Blue Shield for approval of a rate increase.[9] It is true, as Petitioners observe, that the Supreme Court noted that Pennsylvania Dental Association "was clearly eligible to intervene under 1 Pa. Code § 35.28(a)(2)." Id. at 228, 516 A.2d at 652. However, in that case, the public informational hearing, in which the Association sought intervention, was expressly

---

8. It states:

   The following words and terms, when used in this part, have the following meanings, unless the context clearly indicates otherwise:

   * * *

   Matter or proceeding—The elucidation of the relevant facts and applicable law, consideration thereof and action thereupon by the agency with respect to a particular subject within the jurisdiction of the agency,

initiated by a filing or submittal or an agency notice or order.
1 Pa.Code § 31.3.

9. Pennsylvania Dental Association's petition to intervene was undertaken for the purpose of requiring Blue Shield to submit all the underlying documents, studies and data supporting its proposed rate changes and, in turn, allowing the Association the opportunity to review such material before offering its own comments on the rate changes.

required by the Professional Health Services Plan Corporation Act, 40 Pa.C.S. §§ 6301–6335. As the Court further explained,

> [o]n January 7, 1984, the Department published a notice of the filing and of opportunity to submit comments in the *Pennsylvania Bulletin*, pursuant to 40 Pa.C.S. § 6329(b) (relating to procedures for Department approval or refusal of payment applications). [Section] 6329(b), in turn, incorporates procedural requirements set forth at 40 Pa.C.S. § 6102, subsections (c) through (f). *Inter alia*, subsection (e) requires a "reasonable opportunity for hearing, which shall be public." Subsection (f) generally makes Department orders with respect to such applications subject to judicial review. Under the relevant Insurance Department rules, set forth at 31 Pa.Code, and specifically, 31 Pa.Code § 56.1, the Department hearing scheduled and held in this case was governed by the General Rules of Administrative Practice and Procedure, 1 Pa.Code Part II (with certain exceptions not here relevant).

*Id.* at 221, 516 A.2d at 649.

The operative statute in the case at bar, the Health Care Facilities Act, is not analogous to the Professional Health Services Plan Corporation Act. Whereas the Professional Health Services Plan Corporation Act mandates public hearings on rate filings, the Health Care Facilities Act does not require a public informational hearing on an application for a license to operate a long-term care nursing facility. The applicant must undergo an intensive review, including on-site inspections by the Department. 28 Pa.Code § 201.13(b).[10] The standards for licensure are quite stringent. Section 808(a) of the Health Care Facilities Act, 35 P.S. § 448.808(a).[11] However, this detailed regulatory scheme does not contemplate an informal hearing or review process in which residents or members of the public may participate. The General Rules govern procedures for implementing statutes, but they do not create rights or procedures not contemplated by statute. Accordingly, it is irrelevant that the General Rules define what constitutes a "proceeding" in broad terms. 1 Pa.Code § 31.3.[12] The General Rules cannot create the type of "proceeding" on a CHOW Application contemplated by Residents if one is not provided for in the Health Care

---

**10.** It states:

> A license to operate a facility will be issued when the Department receives the completed application form and the licensure fee and when, after inspection by an authorized representative of the Department, it has been determined that the necessary requirements for licensure have been met.

28 Pa.Code § 201.13(b).

**11.** Section 808(a) provides:

> (a) Standards.—The department shall issue a license to a health care provider when it is satisfied that the following standards have been met:
> (1) that the health care provider is a responsible person;
> (2) that the place to be used as a health care facility is adequately constructed, equipped, maintained and operated to safely and efficiently render the services offered;
> (3) that the health care facility provides safe and efficient services which are adequate for the care, treatment and comfort of the patients or residents of such facility;
> (4) that there is substantial compliance with the rules and regulations adopted by the department pursuant to this act; and
> (5) that a certificate of need has been issued if one is necessary.

35 P.S. § 448.808(a).

**12.** *See* n. 8, *supra*.

Facilities Act.[13]

To summarize, *Pennsylvania Dental Association* is distinguishable. The Department cannot give private citizens a seat at the conference table even if it thought it was a good idea. The Department is bound by the Health Care Facilities Act, and the Act does not give nursing home residents the ability to review regulatory filings that may be replete with confidential, financial information and then consult with the Department on how the Department should act.[14] In the absence of express statutory authority, we hold that a "proceeding" as used in 1 Pa.Code § 35.28 does not include meetings between Department staff and regulated entities to which interested persons may invite themselves. Such an expansive interpretation of "proceeding" would allow private citizens to become involved in driver licensing applications, budget discussions in the Office of Administration in the Governor's Office, and every manner of state agency business. It would produce chaos.

In any case, even reading "proceeding" in the way suggested by Residents does not resolve the jurisdictional issue because an order denying a petition to intervene is not an appealable order. Pennsylvania Rule of Appellate Procedure 341 provides that "an appeal may be taken as of right from any final order of an administrative agency." PA. R.A.P. 341(a). The official Note to PA. R.A.P. 341 explains that an order denying a petitioner the right to intervene no longer may be deemed a final order within the meaning of Rule 341 following the 1992 amendments to the Rule.[15] *See also Jefferson County v. Department of Environmental Protection*, 703 A.2d 1063 (Pa.Cmwlth.1997); *Cogan v. County of Beaver*, 690 A.2d 763 (Pa.Cmwlth.1997) (both cases acknowledging that an order denying intervention is not an appealable "final order" under Rule 341). The official Note also states that, in an appropriate case, an order denying intervention might be appealable under PA. R.A.P. 312, relating to interlocu-

13. We also reject Residents' assertion that they had a right to seek intervention under Section 35.28 of the General Rules as consumers or customers served by the applicant. Section 35.28(a)(2) of the General Rules states:

(a) Persons. A petition to intervene may be filed by a person claiming a right to intervene or an interest of such nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought. The right or interest may be one of the following:

* * *

(2) An interest which may be directly affected and which is not adequately represented by existing parties, and as to which petitioners may be bound by the action of the agency in the proceeding. *The following may have an interest: consumers, customers or other patrons* served by the applicant or respondent; holders of securities of the applicant or respondent; employes of the applicant or respondent; competitors of the applicant or respondent.

1 Pa.Code § 35.28(a)(2) (emphasis added).

Residents are clearly "customers" of Manor Care; however, that is not an interest that gives them standing under the Health Care Facilities Act. In any case, even if Residents may be considered "persons" for purposes of filing a petition to intervene, there is still no "proceeding" in which to intervene.

14. This is not to say that the Department is not free to solicit public comment on a regulatory matter, such as a CHOW Application.

15. The official Note states, in pertinent part:

The following is a partial list of orders that are no longer appealable as final orders pursuant to Rule 341 but which, in an appropriate case, might fall under Rules 312 (Interlocutory Appeals by Permission) or 313 (Collateral Orders) of this Chapter.

* * *

(4) an order denying a party the right to intervene[.]

PA. R.A.P. 341, Official Note.

tory appeals by permission, or Pa. R.A.P. 313, relating to collateral orders. Pa. R.A.P. 312 is not applicable in this case,[16] therefore, we must determine whether the Department's Final Response denying intervention is a collateral order under Pa. R.A.P. 313.

Rule 313 states that "[a]n appeal may be taken as of right from a collateral order of an administrative agency." Pa. R.A.P. 313(a). A collateral order is appealable if all three of the following requirements are met:

(1) the order is separable from, and collateral to, the main cause of action;

(2) the right involved is too important to be denied review; and

(3) the question presented is such that, if review were postponed until final judgment in the case, the claim would be irreparably lost.

*H.R. v. Department of Public Welfare*, 676 A.2d 755, 759 (Pa.Cmwlth.1996).[17] Additionally, the requirements for appealing a collateral order "are stringent and must be narrowly construed." *Jefferson County*, 703 A.2d at 1065 (quoting *Strain v. Simpson House*, 690 A.2d 785, 787 (Pa. Cmwlth.1997)).

Here, the Department's order denying Residents' petitions for intervention is separable from, and collateral to, the Department's review of Manor Care's CHOW Applications. However, we cannot say that Residents' asserted right to intervene in the licensure proceedings is a question "too important to be denied review." *H.R.*, 676 A.2d at 759.

In explaining the "important question" criterion, this Court has noted that

the merits of the petition to intervene necessarily are considered as part of the analysis to determine whether the claim asserted is "too important to be denied review," but that "the mere assertion of a right to intervene is not per se too important to be denied review."

*Jefferson County*, 703 A.2d at 1065 (quoting *Cogan*, 690 A.2d at 765). Here, the Department denied Residents' petition to intervene because their petition did not conform with the form and content requirements of Section 35.29 of the General Rules.[18] Residents' "Factual Allegations" were complaints regarding the current level of care provided at two of Manor Care's facilities, and really had no bearing on whether the prospective owner of the facil-

**16.** In this case, Petitioners chose not to follow the requirements for securing appeal by permission referenced in Pas. R.A.P. 312. Under Pa. R.A.P. 312, this Court may permit review of an interlocutory order if the government unit has certified that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter." 42 Pa.C.S. § 702(b). Pa. R.A.P. 1311(b) requires a party seeking interlocutory appeal by permission to obtain the requisite certification from the government unit "within 30 days after the entry of such interlocutory order." Petitioners do not explain why they did not avail themselves of this certification procedure. Had the Depart-

ment refused to amend its Final Response to include the 42 Pa.C.S. § 702(b) statement, Petitioners could have petitioned this Court to review that decision.

**17.** Because Residents failed to satisfy the second requirement for an appealable collateral order, we need not consider the third requirement that the question presented is such that, if review were postponed until final judgment in the case, the claim would be irreparably lost. Residents' right to intervene appears to be already "irreparably lost" since the change of ownership transactions have been completed.

**18.** *See* n. 4, *supra.*

ities could meet the statutory or regulatory requirements for licensure.[19] Further, they lacked the specificity required in 1 Pa.Code § 35.29. The Department was correct that Residents failed to satisfy 1 Pa.Code § 35.29 by putting forth relevant factual allegations, and we cannot say that Residents' argument to the contrary is "too important to be denied review" for purposes of the collateral order doctrine.

In summary, Petitioners have attempted to appeal the Department's order denying their petitions to intervene in the Department's review of Manor Care's CHOW Applications. This was not a final order, nor have Petitioners satisfied the requirements for an appealable interlocutory or collateral order. Lacking jurisdiction, we quash the petition for review.[20]

Petition for review quashed.

### *ORDER*

AND NOW, this 20th day of March, 2009, the Petition for Review filed by David Adams and Rose Frontino (by Josephine Miechur and Marie Richards with Power of Attorney) in the above-captioned matter is hereby QUASHED.

---

19. Indeed, the issues that Petitioners intended to raise as intervenors concern the applicants' ability to operate safe and efficient facilities; treat residents humanely and courteously; provide qualified and trained staff; and maintain sufficient funding and working capital. These "issues" are duplicative of the factors the Department must consider when it reviews a license application. Section 808 of the Health Care Facilities Act, 35 P.S. § 448.808. *See also* Section 807(a) of the Health Care Facilities Act, 35 P.S. § 448.807(a) (requiring an application for a license to contain "such information as the [D]epartment considers necessary to determine that the ... health care facility meet[s] the requirements of licensure under the provisions of this act and the rules and regulations relating to licensure.").

20. We note that Residents and other residents of long-term care facilities are not left without a voice, especially when their concerns are like those raised in this case. The Department's regulations contain an entire section devoted to "Resident rights" which require a facility to, *inter alia,* advise residents of their rights; encourage and assist residents in voicing grievances and recommending changes in policies and services; and treat residents with consideration, respect and full recognition of dignity and individuality. 28 Pa.Code § 201.29. The Health Care Facilities Act grants considerable discretion to the Department to suspend, revoke or limit a facility's license for serious violations of state or federal regulations; patterns of deficiencies; or incompetence, negligence or misconduct in providing services to patients. 35 P.S. § 448.811. Representatives of the Department may also enter and inspect a facility at any time to determine the adequacy of the care and treatment provided. 35 P.S. § 448.813. In addition, the Department adopted a policy in 1998 to maintain a statewide, toll-free complaint response system 24 hours a day, 365 days a year, notice of which is posted in every licensed facility. Manor Care Brief at 18, n. 7.