# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christine A. Reuther and Ani Marie : 
Diakatos, :
                    Appellants :
                                 :
          v. : No. 1365 C.D. 2017
                                 : Submitted: October 6, 2017
Delaware County Bureau of Elections :
and Christine Rossi :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge[1]
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**             **FILED: October 26, 2017**

      Christine A. Reuther and Ani Marie Diakatos (Objectors) appeal from an order of the Court of Common Pleas of Delaware County (trial court), dated September 19, 2017, denying their Emergency Petition for Relief Regarding the November 2017 General Election (Petition), seeking to strike Christine Rossi (Candidate) from the general election ballot. The two issues before this Court are: (1) whether the Petition was timely filed; and (2) whether Candidate's failure to file her Statement of Financial Interests (SOFI) with Nether Providence Township (Township) is a fatal defect. We now affirm.

      The facts of this case are not in dispute. Candidate received sufficient votes in the Township's May 17, 2017 primary as a write-in candidate to win the Republican nomination for Township Tax Collector. The Delaware County Bureau of Elections (Bureau) notified Candidate that she was certified as the Republican nominee and instructed her to submit her SOFI to the Bureau and the Township by

---

[1] This opinion was re-assigned to the authoring Judge on October 19, 2017.

June 30, 2017, in order to have her name appear on the general election ballot. (*See* Certified Record (C.R.), Petition at Ex. A (June 2, 2017 Letter).) On June 30, 2017, Candidate timely filed her SOFI with the Bureau but not the Township.

Based upon a Right-to-Know Law[2] request made to the Township on September 6, 2017, Objectors learned that Candidate had not filed her SOFI with the Township. On September 13, 2017, Objectors filed the Petition with the trial court. On September 14, 2017, Candidate filed her SOFI with the Township. The trial court conducted a hearing on September 18, 2017. On September 18, 2017, Candidate filed an answer with new matter to the Petition. On September 19, 2017, the trial court denied the Petition because there is no "statutory provision making [Candidate's] filing of her [SOFI] either improper or a fatal defect to her candidacy." (Trial Ct. Op. at 3.) Objectors appealed to this Court.[3]

As a preliminary matter, we must determine whether Objectors' Petition was timely filed.[4] Candidate and the Bureau argue that Objectors' Petition was untimely because it was filed more than 70 days after Candidate's nomination was certified. They assert that Section 977 of the Pennsylvania Election Code (Election Code)[5] makes clear that objections to nomination petitions and papers must be filed "within seven days after the last day for filing said nomination petition or

---

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-.3104.

[3] "Our scope of review is limited to determining whether the trial court's findings of fact are supported by substantial evidence, whether the trial court abused its discretion or whether the trial court committed an error of law." *In re Prosperino*, 972 A.2d 92, 94 n.4 (Pa. Cmwlth. 2009).

[4] Although Candidate raised the Petition's timeliness to the trial court, *see* Objector Br. at 12, the trial court did not address that issue.

[5] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2937.

2

paper."[6]  Notably, there is no similar provision in the Election Code[7] for challenges to write-in candidates.[8]  Under the circumstances, Candidate and the Bureau suggest that because Section 977 of the Election Code makes the objection deadline seven days from the candidate's last date to make public his/her intention to run for office by filing the necessary nomination petitions or papers, in this instance Objectors should similarly have until seven days after Candidate's 30-day deadline to show her intention to be a general election candidate.

First, "[c]itizens of the Commonwealth are free to cast their vote for their candidate of choice, by write-in or otherwise."  *Working Families Party v.*

---

[6] Section 977 of the Election Code provides, in relevant part:

> All nomination petitions and papers received and filed within the periods limited by this [Election Code] shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside.

This Court explained:

> [A] nomination petition is filed by a person *seeking* to be a candidate in a political party's primary.  A 'nomination paper' is filed by a minor party candidate *to get on* the general election ballot.  However, the standards for challenging a nomination paper or petition are virtually the same, as are the procedures.

*In re Nomination Papers of Mann*, 944 A.2d 119, 124 (Pa. Cmwlth.) (emphasis added), *aff'd sub nom. In re Mann*, 944 A.2d 77 (Pa. 2008).

[7] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2601-3591.

[8] Generally, "the Ethics Act[, 65 Pa. C.S. §§ 1101-1113,] and the Election Code are *in pari materia*, and, therefore, the language of each act should be considered together."  *In re Nomination of Paulmier*, 937 A.2d 364, 371 (Pa. 2007).  The Supreme Court has explained their interactions, as follows:

> [A] candidate wishing to run for election must follow the provisions of both [the Ethics Act and the Election Code,] as it is the Election Code which governs the filing of a candidate's nomination petition with the Secretary of the Commonwealth, but the Ethics Act that mandates that a [SOFI] be appended.

*Id.* at 369.

3

*Commonwealth*, ___ A.3d ___ (Pa. Cmwlth., No. 435 M.D. 2016, filed September 8, 2017), slip op. at 20. Further, Section 922 of the Election Code, as amended, 25 P.S. § 2882, specifies that "[c]andidates . . . who receive a plurality of votes of their party electors . . . in the political district . . . at the primary election . . . shall be candidates of their respective parties, and it shall be the duty of the proper county boards to print their names upon the official ballots . . . at the succeeding election."

In this case, Candidate did not seek ballot access by filing a nomination petition in advance of the primary that made public an intention to be nominated by the Republican party.[9] Rather, the Township's qualified Republican electors nominated Candidate by write-in and declared by popular vote that she is the party's candidate for Tax Collector in the general election. Under such circumstances, the

---

[9] Gaining ballot access by nomination petition versus by write-in are distinctly different processes. Section 902 of the Election Code, *as amended*, 25 P.S. § 2862, provides:

> All candidates of political parties . . . for . . . elective public offices within this State, . . . shall be nominated, and . . . under the provisions . . . of this [Election Code] or under the party rules, are required to be elected by the party electors . . . at primaries held in accordance with the provisions of this act, except as otherwise provided in this [Election Code].

Only persons who have filed nomination petitions may have their names appear on the primary ballot. Section 907 of the Election Code, *as amended*, 25 P.S. § 2867, provides:

> The names of candidates . . . for party nominations . . . shall be printed upon the official primary ballots or ballot labels of a designated party, upon the filing of separate nomination petitions in their behalf, . . . signed by duly registered and enrolled members of such party who are qualified electors of . . . the political district . . . within which the nomination is to be made or election is to be held. . . . The name of no candidate shall be placed upon the official ballots or ballot labels of a political party to be used at any primary, unless such petition shall have been filed in his behalf.

Otherwise, primary candidates may be nominated by write-in, without having previously filed nomination petitions. *See* Section 1002(b) of the Election Code, *as amended*, 25 P.S. § 2962(b); Section 1216(e) of the Election Code, *as amended*, 25 P.S. § 3056(e); Section 1112-A of the Election Code, added by Section 4 of the Act of July 11, 1980, P.L. 600, 25 P.S. § 3031.12.

4

primary election is over, and the majority of the Republican electors have spoken. So long as Candidate took the steps necessary to have her name placed on the general election ballot, she would be the Republican candidate for Township Tax Collector.

Moreover, in *In re Nomination Petition of Guzzardi*, 99 A.3d 381 (Pa. 2014),[10] the Pennsylvania Supreme Court made abundantly clear:

> Elections are appropriately regulated by the political branch precisely because they are inherently political. This essential legislative governance fosters orderly, efficient, and fair proceedings. In this regard, statutory filing requirements and attendant deadlines 'ensure the orderly functioning of the primary-election timetable so that those responsible will have sufficient time to prepare the ballot properly.' *Gomes v. Rhode Island State Bd. of Elections*, . . . 393 A.2d 1088, 1090 ([R.I.] 1978).

*In re Guzzardi*, 99 A.3d at 385. Accordingly,

> the judiciary should act with restraint, in the election arena, subordinate to express statutory directives. Subject to constitutional limitations, the Pennsylvania General Assembly may require such practices and procedures as it may deem necessary to the orderly, fair, and efficient administration of public elections in Pennsylvania. . . . *Pennsylvania courts may not mitigate the legislatively[-]prescribed outcome through recourse to equity.*

*Id.* at 386 (emphasis added). The Supreme Court has also admonished:

> We note that, 'when interpreting a statute we must listen attentively to what the statute says, but also to what it does not say.' *Johnson v. Lansdale Borough*, 146 A.3d 696, 711 (Pa. 2016). In other words, '*it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include*.' *Commonwealth v. Johnson*, . . . 26 A.3d 1078, 1090 ([Pa.] 2011).

*Hanaway v. Parkesburg Grp., LP*, 168 A.3d 146, 154 (Pa. 2017) (emphasis added).

Thus, where the General Assembly did not impose a deadline on when objectors

---

[10] In *Guzzardi*, as in the instant matter, the candidate filed his SOFI with only one of two required offices.

5

may challenge the validity of a person's write-in candidacy, this Court is prohibited from doing so. As discussed above, an individual seeking to be a party's nominee is different and distinct from a write-in candidate. The Election Code expressly regulates the steps an individual must adhere to in order to have his or her name placed on the primary ballot. The General Assembly has not promulgated similar procedures for write-in candidates. Accordingly, because no statutory deadline exists by which Objectors had to object to Candidate's write-in candidacy, we hold that the Petition was timely (or more accurately not untimely) filed on September 13, 2017.

Relative to the substance of Objectors' challenge that Candidate's failure to file her SOFI with the Township is a fatal defect, there is no question that SOFI filings are mandatory before a candidate may *hold* public office.[11] The General Assembly specifically pronounced in Section 1104(d) of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa. C.S. § 1104(d): "No public official shall be allowed to take the oath of office or enter or continue upon h[er] duties, nor shall [s]he receive compensation from public funds, unless [s]he has filed a [SOFI] as required by [the Ethics Act]."

---

[11] The purpose behind the Ethics Act and SOFI filing requirement is based upon the General Assembly's declaration:

> In order to strengthen the faith and confidence of the people of this Commonwealth in their government, the Legislature further declares that the people have a right to be assured that the financial interests of holders of or nominees or candidates for public office do not conflict with the public trust. Because public confidence in government can best be sustained by assuring the people of the impartiality and honesty of public officials, this [Ethics Act] shall be liberally construed to promote complete financial disclosure as specified in this chapter. Furthermore, it is recognized that clear guidelines are needed in order to guide public officials and employees in their actions. Thus, the General Assembly by this [Ethics Act] intends to define as clearly as possible those areas which represent conflict with the public trust.

Section 1101.1(a) of the Ethics Act, 65 Pa. C.S. § 1101.1(a).

With regard to a candidate filing a petition to appear on the ballot, Section 1104(b) of the Ethics Act, 65 Pa. C.S. § 1104(b), requires the filing of a SOFI. It provides, in relevant part:

> (2) Any candidate for county-level or local office shall file a [SOFI] for the preceding calendar year with the governing authority of the political subdivision in which [s]he is a candidate on or before the last day for filing a petition to appear on the ballot for election. A copy of the [SOFI] shall also be appended to such petition.
>
> (3) No petition to appear on the ballot for election shall be accepted by the respective State or local election officials unless the petition has appended thereto a [SOFI] as set forth in paragraphs (1) and (2). *Failure to file the [SOFI] in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot.*

65 Pa. C.S. § 1104(b) (emphasis added). Accordingly, an individual seeking to be placed on the ballot who fails to file his/her SOFI with his/her nomination petitions or papers *and* with the governing body of the local political subdivision must have his/her name stricken from the ballot when timely challenged.[12] *See Guzzardi.*

_____

[12] In *In re Nomination Petition of Bryant*, 852 A.2d 1193 (Pa. 2004), our Supreme Court held that an objection to a candidate's nomination petition based on a failure to disclose information in a SOFI is subject to a statutory seven-day deadline for presenting objections to nomination petitions. The Supreme Court reasoned: "[I]n light of the requirement that a nomination petition 'shall be deemed to be valid' where it is unchallenged within the requisite period, [Section 977 of the Election Code,] 25 P.S. § 2937, a candidate's noncompliance with Section 1104 of the Ethics Act may not be newly raised as a basis for setting aside a petition outside of the statutorily-prescribed period." *In re Bryant*, 852 A.2d at 1196. The Supreme Court observed that this Court, in considering the challenges to the SOFI, held "that strict adherence to the seven-day requirement was not required as concerns challenges based on an incomplete or untimely-filed financial disclosure statement, since little preparation is necessary for a candidate to defend against such objections." *Id.* at 1194. The Supreme Court reversed our Court, holding that our decision was contrary to the precedent of the Supreme Court, particularly its decision in *State Ethics Commission v. Cresson*, 597 A.2d 1146 (Pa. 1991). In *Cresson*, the Supreme Court held "that petitions to set aside nomination petitions founded on asserted violations of the financial disclosure provisions of the Ethics Act must be filed within the seven-day period prescribed under Section

7

Section 1104(b) of the Ethics Act specifically applies to persons who become candidates by filing nomination petitions or papers. The Ethics Act, however, does not contain a similar provision applicable to write-in candidates.

Nevertheless, Section 15.3(e) of the Ethics Commission's regulations, 51 Pa. Code § 15.3(e), addresses the filing of a SOFI by write-in candidates. It mandates:[13]

> A write-in[]candidate *shall file a [SOFI] within 30 days of having been nominated or elected unless the person declines the nomination or office within that period of time.*[14]
>
> (1) *The [SOFI] shall be filed* with the [Ethics] Commission for State[-]level public office and *with the governing authority of the political subdivision wherein the person has been elected or nominated for* county or *local level office.*
>
> (2) For the purposes of calculating *the 30-day period* during which the [SOFI] shall be filed, the time *shall commence on the date that the appropriate board of elections certifies the*

---

977 of the Election Code." *In re Bryant*, 852 A.2d at 1195. The Supreme Court's reasoning in *In re Bryant* and *Cresson* suggests that even challenges to the failure to file any SOFI must be made within seven days of the filing of the nomination petition to be considered. By extension, failure to file a SOFI at the time of filing a nomination petition would only be a fatal defect if timely challenged under Section 977 of the Election Code. Thus, there could be an instance where a candidate fails to file a SOFI with the governing authority of the political subdivision in which she is a candidate, but the failure goes unchallenged. In such instance, the failure would not be a fatal defect. Nevertheless, recourse would be available through a complaint with the State Ethics Commission (Ethics Commission). *See* 51 Pa. Code § 19.3.

[13] Section 1107(1) of the Ethics Act, 65 Pa. C.S. § 1107(1), commands the Ethics Commission to "[p]rescribe and publish rules and regulations to carry out the provisions of [the Ethics Act]." Moreover, as an agency's interpretation of law, "a regulation has the force and effect of law." *Borough of Bedford v. Dep't of Envtl. Prot.*, 972 A.2d 53, 61 (Pa. Cmwlth. 2009). We note that although Objectors raised Section 15.3(e) of the Ethics Commission's regulations in their Petition, the trial court did not address it.

[14] We interpret this language as requiring a successful write-in candidate to affirmatively act within 30 days *to decline* the nomination. Otherwise, it is presumed that the candidate has accepted the nomination and will file the SOFI.

8

> *individual as the winner of a nomination or election.*

51 Pa. Code § 15.3(e) (emphasis added). "Candidate" is defined in the Ethics Act, in relevant part, as one who has "taken the action necessary under the laws of this Commonwealth to qualify [her]self for nomination or election[,]" and includes write-in candidates who have not declined within 30 days.[15, 16] Section 1102 of the Ethics Act, 65 Pa. C.S. § 1102.

---

[15] Section 1102 of the Ethics Act defines "candidate" as:

Any individual who seeks nomination or election to public office by vote of the electorate . . . . An individual shall be deemed to be seeking nomination or election to such office if [s]he has:

(1) received a contribution or made an expenditure or given his[/her] consent for any other person or committee to receive a contribution or make an expenditure for the purpose of influencing his nomination or election to such office . . . . ; or

(2) taken the action necessary under the laws of this Commonwealth to qualify himself[/herself] for nomination or election to such office.

The term shall include individuals nominated or elected as write-in candidates unless they resign such nomination or elected office within 30 days of having been nominated or elected.

65 Pa. C.S. § 1102.

[16] Here, the Bureau certified the primary election results on May 31, 2017. (*See* Bureau Br. at 3.) In its June 2, 2017 Letter, the Bureau notified Candidate that she was certified as the Republican candidate for Township Tax Collector and instructed:

Write-In Candidates who wish their name to appear on the November 2017 ballot are required to file with the [Bureau] on or before June 30, 2017 a Candidate's Affidavit/Waiver of Expenses Account Reporting Affidavit . . . and a[SOFI]. . . . Upon completion of the above[-]referenced documents, please return them to the [Bureau] and the governing authority for the office in which you were nominated so that your name can be placed on the November ballot.

(C.R., June 2, 2017 Letter) Section 910 of the Election Code, *as amended*, 25 P.S. § 2870, however, requires a candidate for office to file a candidate's affidavit with or prior to filing nomination petitions or papers in order to be placed on the ballot, but it does not set forth a requirement that a successful write-in candidate file an affidavit. Nothing in the Election Code requires a successful write-in Candidate file anything to be placed on the ballot.

9

Clearly, Section 15.3(e) of the Ethics Commission's regulations requires Candidate, as a write-in candidate who has not declined the nomination, to file her SOFI with the Township within thirty days of the certification of the election results. It does not, however, make the filing of a SOFI within that time period a condition precedent to Candidate's name appearing on the municipal or general election ballot, as it does not contain fatal defect language similar to that contained in Section 1104(b)(3) of the Ethics Act or specify any consequence for failure to file a timely SOFI.[17, 18]

The lack of a consequence in Section 15.3(e) of the Ethics Commission's regulations and the lack of the applicability of Section 1104(b)(3) of

---

[17] The Ethics Commission, through Section 15.3(e) of the Ethics Commission's regulations, provided that Candidate "shall" file her SOFI with the Township and "shall" file it within 30 days of the Bureau's certification. Our Supreme Court has declared that "[t]he word 'shall' by definition is mandatory, and it is generally applied as such." *Chanceford Aviation Props, L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1104 (Pa. 2007). Whether the Ethics Commission's use of the term "shall" in the Regulation was intended as a mandate, depends upon "the perceived intent of the legislature." *Commonwealth v. Ferguson*, 552 .2d 075, 1079 (Pa. Super. 1988). There is no question that the General Assembly intended by the clear language in the Ethics Act to require candidates for public office to file their SOFIs in a particular place and by a particular date. *See* Section 1104 of the Ethics Act. Consistently, then, we have no hesitation in interpreting the Ethics Commission's use of the term "shall" in the Section 15.3(e) of the Ethics Commission's regulation as mandatory. Such an interpretation, however, does not negate the fact that neither the Ethics Act nor the Ethics Commission's regulations provides for the penalty of striking a name from a ballot for failure to comply with the mandate of the regulation.

[18] Even if we were to agree with the dissent that the filing of a SOFI is a condition precedent to appearing on the general election ballot, such that the courts under the Election Code must have the power to remove successful write-in candidates from the general or municipal election ballot who flaunt the Ethics Commission's regulation, the outcome would remain the same. This is because, even if it were a condition precedent to appearing on the ballot, the failure of a write-in candidate to file a SOFI within the thirty-day period is not a fatal defect in the absence of the fatal defect language. Instead, it may be corrected prior to election and, therefore, would be an amendable defect. Candidate here cured the defect within a day of learning of her error. There is no evidence of any intent to deceive or conceal anything from voters. Accordingly, even assuming the Election Code procedures for removing a candidate applied in this case, we would not remove Candidate from the ballot because she remedied the defect.

10

the Ethics Act to write-in candidates appearing on the municipal or general election ballot do not mean that there is no recourse or consequence when a write-in candidate fails/refuses to file a SOFI in compliance with the regulation. Rather, complaints may be filed pursuant to Chapter 21 of the Ethics Commission's regulations, 51 Pa. Code §§ 21.1-.30, pertaining to investigations. Complaints involving late or deficient filings may be handled pursuant to Section 9.3 of the Ethics Commission's regulations, 51 Pa. Code § 19.3, pertaining to late or deficient filings, which provides, in part:

> (b) If a complaint is received alleging that a required filing is deficient or has not been made, the Commission may elect to proceed in the matter under this section rather than through the investigative procedures of Chapter 21 (relating to investigations).
>
>> (1) Upon election, the complainant will be notified of the decision as well as the final resolution of the matter.
>>
>> (2) In determining whether to proceed under this section, the Commission may consider whether:
>>
>>> (i) The deficient filing or failure to file was intentional.
>>>
>>> (ii) The filer had prior notice of the requirements of the act.
>>>
>>> (iii) The filer has in the past complied with the act.
>
> (c) *The individual notified in accordance with subsection (a) has 20 days from the mailing date of the notice to correct deficiencies or to file a Statement of Financial Interests. If an individual fails to file or to correct his statement within that time, the Commission will review the matter to determine whether a civil penalty is appropriate under the act.*

(Emphasis added.) Here, Candidate timely filed her SOFI with the Bureau but failed to file it with the Township. *Within one day* of Objectors' filing of the Petition, Candidate filed her SOFI with the Township, thereby bringing herself into

11

compliance.  It is questionable whether the Ethics Commission would impose a penalty under these circumstances, but Objectors, nevertheless, could file a complaint with the Ethics Commission, if they so choose.

Because there is no provision in the Ethics Act, Election Code, or the Ethics Commission's regulations that makes a write-in candidate's failure to file a SOFI "fatal" in terms of the candidate's position on the municipal or general election ballot, the Court holds that noncompliance with the regulation is a matter for enforcement by the State Ethics Commission in the first instance, and not the courts.[19]  We are mindful of our Supreme Court's admonishment in *Hanaway*, that

---

[19] Section 1101.1(c) of the Ethics Act, 65 Pa. C.S. § 1101.1(c), makes the Ethics Commission responsible for administering and enforcing the Ethics Act.  Section 1107(5) of the Ethics Act, 65 Pa. C.S. § 1107(5), requires the Ethics Commission to review state-level office candidates' SOFIs and notify the candidate of any deficiencies, but there is no similar requirement for county or local agencies.  Further, Section 302(j) of the Election Code, *as amended*, 25 P.S. § 2642(j), merely requires that county election boards shall "receive and determine . . . the sufficiency of nomination petitions, certificates and papers of candidates for . . . township . . . and local party offices required by law or by party rules to be filed with the board."  At the trial court hearing, the Bureau's counsel represented that the Bureau "[does not] police what gets filed in the individual township[]s, and boroughs, and school districts." (C.R., Notes of Testimony, September 18, 2017, at 12.)  These circumstances, however, do not negate the ability of an *individual* to file a complaint pursuant to Section 19.3 and Chapter 21 of the Ethics Commission's regulations, much like how individual objectors file objections to nomination petitions.

Moreover, while some may find it absurd to treat individuals differently depending on whether they became a candidate on the ballot through the nomination process or became a candidate based upon write-in votes, courts are not allowed to amend *unambiguous* statutes or regulations to cure absurdity.  *But see* 1 Pa. C.S. § 1922 (requiring courts, in interpreting ambiguous provisions, to presume, *inter alia*, that the General Assembly does not intend a result that is absurd or unreasonable).  We cannot read additional provisions into the Ethics Act or its regulations.  Just as the Supreme Court in *Guzzardi* could not apply principles of equity to lessen the harsh result of statutory provisions that made failure to file a SOFI a fatal defect, we cannot apply principles of equity to impose a sanction that neither the General Assembly nor the Ethics Commission has seen fit to impose in this circumstance.  *See Guzzardi*, 99 A.3d at 385-86.

Furthermore, there is at least one rational explanation for the disparate treatment of would-be candidates who petition to appear on a ballot and successful write-in candidates.  The would-be candidate does not become a candidate until she files the SOFI.  The successful write-in

the courts may not add to a statute a provision which the General Assembly did not see fit to enact. *See Hanaway*, 168 A.3d at 154.

Based on the foregoing, we affirm the trial court's order.

_____
P. KEVIN BROBSON, Judge

_____

candidate, by contrast, has already won an election. Removing a potential candidate from the ballot for failure to file a timely SOFI as a fatal defect directly affects only that would-be candidate, but removing a successful write-in candidate deprives primary electors of their duly-elected nominee. Accordingly, it is not unreasonable that the General Assembly and the Ethics Commission would chose to treat the failure of a would-be candidate to file a timely SOFI as fatal, while at the same time allow a successful write-in candidate to amend and correct the same defect.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christine A. Reuther and Ani Marie :
Diakatos, :
      Appellants :
         :
    v. : No. 1365 C.D. 2017
         :
Delaware County Bureau of Elections :
and Christine Rossi :

# O R D E R

AND NOW, this 26th day of October, 2017, the order of the Court of Common Pleas of Delaware County, dated September 19, 2017, is AFFIRMED.

_____
P. KEVIN BROBSON, Judge

Christine A. Reuther and Ani Marie : 
Diakatos, : 
                Appellants : 
                               : 
        v. : 
                                 : 
Delaware County Bureau of Elections :   No. 1365 C.D. 2017
and Christine Rossi :   Submitted: October 6, 2017

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

CONCURRING AND DISSENTING
OPINION BY JUDGE COVEY                  FILED: October 26, 2017

       I agree with the Majority's ruling that Christine A. Reuther's and Ani Marie Diakatos' (Objectors) Emergency Petition for Relief Regarding the November 2017 General Election (Petition) seeking to strike Christine Rossi (Candidate) from the general election ballot was timely filed. However, I respectfully dissent from the Majority's ruling that although Section 15.3(e) of the State Ethics Commission's (Ethics Commission) Regulations (Regulation) is mandatory, it will not enforce the consequence of Candidate's noncompliance with the law and Delaware County Bureau of Election's (Bureau) specific instruction to timely submit her Statement of Financial Interests (SOFI) to the Bureau and Nether Providence Township (Township), thereby, allowing Candidate's name to appear on the ballot. The Majority's holding is in complete derogation of the General Assembly's clear intent in the Public Official and Employee Ethics Act (Ethics Act),[1] rewrites the Regulation, creates two classes of candidates (those nominated by petition/paper (Nomination Candidates) and those

_____

[1] 65 Pa. C.S. §§ 1101-1113.

nominated by write-in (Write-In Candidates)), and treats these two classes of candidates in distinctly different manners resulting in fundamental unfairness.

In interpreting the Ethics Act and the Regulation, "[o]ur rules of statutory construction make clear that . . . we must at all times seek to ascertain and effectuate the legislative intent underlying the enactment of the particular statute(s). 1 Pa.C.S. § 1921(a)." *Pa. Fin. Responsibility Assigned Claims Plan v. English*, 664 A.2d 84, 87 (Pa. 1995). The Majority rules that a nominee's and a candidate's filing of his/her SOFI is **mandatory**. This conclusion is firmly founded upon the General Assembly's unequivocal

> declar[ation] that the **people** [**of this Commonwealth**] **have a right to** be assured that **the financial interests of** holders of or **nominees or candidates** for public office do not conflict with the public trust. [Thus, the Ethics Act] shall be **liberally construed to promote complete financial disclosure** as specified in this [Ethics Act].

Section 1101.1(a) of the Ethics Act, 65 Pa.C.S. § 1101.1(a) (emphasis added).

The General Assembly further evidenced its intent that nominees and candidates must disclose their financial interests **before** becoming a nominee or candidate in its definition of "candidate" as **one who has "taken the action necessary under the laws of this Commonwealth to qualify** [her]self **for nomination or election** . . . ." 65 Pa.C.S. § 1102 (emphasis added). The General Assembly specifically included Write-In Candidates in that definition,[2] thereby not distinguishing between Nomination Candidates and Write-In Candidates, but rather requiring **all** candidates to adhere to the Commonwealth's laws in order to "qualify" "for nomination

---

[2] "The term [candidate] shall include individuals nominated **or elected as write-in candidates** unless they resign such nomination or elected office within 30 days of having been nominated or elected." 65 Pa.C.S. § 1102 (emphasis added).

2

or election." 65 Pa.C.S. § 1102. To "qualify"[3] means to "possess[] [] qualities . . . legally necessary to make one eligible for a position or office, or to perform a public duty or function[.]" Black's Law Dictionary 1360 (9th ed. 2009). Similarly, Merriam-Webster's Collegiate Dictionary (11th ed. 2004) defines "qualify" as "to invest with legal capacity . . . [;] to become fit (as for an office)[;] . . . to meet the required standard[;] . . . to acquire legal or competent power or capacity[.]" *Id.* at 1017. Accordingly, Candidate must be qualified for election.

I part ways with the Majority when it concludes that "Section 15.3(e) of the Ethics Commission's [R]egulations requires Candidate, as a write-in . . . to file her SOFI [within a specified time] . . . [but] does not . . . make the filing of a SOFI . . . a condition precedent to Candidate's name appearing on the . . . ballot." Majority Op. at 10. The Ethics Act states when and where a Nomination Candidate must file his/her SOFI and the consequences for failure to do so. A Write-In Candidate, by definition, does not follow that procedure. However, the Ethics Commission, as authorized by the General Assembly, promulgated regulations to implement the Legislature's intended purpose of the Ethics Act.[4] In fulfillment of its duty and in accordance with the Ethics Act, the Ethics Commission promulgated the Regulation to clearly communicate, **with the force of law**, that a Write-In Candidate shall file his/her SOFI at a certain place by a date certain.

---

[3] Section 1903(a) of the Statutory Construction Act of 1972 states, in relevant part: "Words . . . shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S § 1903(a). "As the legislature did not define [the term 'qualify' in the Ethics Act], its common and approved usage may be ascertained by examining its dictionary definition." *Commonwealth v. Hart*, 28 A.3d 898, 909 (Pa. 2011).

[4] Section 1107(1) of the Ethics Act states: "In addition to other powers and duties prescribed by law, the [Ethics C]ommission shall . . . [p]rescribe and publish rules and regulations to carry out the provisions of [the Ethics Act]." 65 Pa.C.S. § 1107(1).

3

The Majority acknowledges that the Regulation mandates:

A write-in[]candidate **shall file a [SOFI] within 30 days of having been nominated or elected unless the person declines the nomination or office within that period of time**.

(1) **The [SOFI] shall be filed** with the [Ethics] Commission for State[-]level public office and **with the governing authority of the political subdivision wherein the person has been elected or nominated for** county or **local level office**.

(2) For the purposes of calculating **the 30-day period** during which the [SOFI] shall be filed, the time **shall commence on the date that the appropriate board of elections certifies the individual as the winner of a nomination or election**.

51 Pa. Code § 15.3(e) (emphasis added). The Majority further recognizes that this "[R]egulation is [the Ethics Commission's] exercise of delegated legislative power **to create a mandatory standard of behavior**," namely, that a Write-In Candidate must file a SOFI with the local governing authority within a 30-day period. *Moyer v. Berks Cnty. Bd. of Assessment Appeals*, 803 A.2d 833, 842 (Pa. Cmwlth. 2002) (quotation marks omitted; emphasis added).

Notwithstanding this legal requirement, **the Majority** concludes that because the Regulation does not state that failure to file a SOFI constitutes a "fatal defect," **Write-In Candidates are held to a different, more lenient standard**. In addition, the Majority authorizes Write-In Candidates who have failed to timely file their SOFIs to have their names placed on the ballot despite the fact that the law, *i.e.*, the Regulation, is to the contrary, and similarly-situated Nomination Candidates who have failed to timely file their SOFIs will not have their names appear on the ballot. The law is well settled that, "[i]n ascertaining the intention of the General Assembly in the enactment of a statute[,]" it is presumed "[t]hat the General Assembly does not

4

intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1). The Majority's result is unreasonable, negates the Ethics Act's clearly-stated purpose, renders the General Assembly's mandatory language directory,[5] and completely eviscerates the Ethics Commission's regulatory mandate.

Moreover, when interpreting a statute, this Court is not authorized to interpret it in such a manner that creates "[dis]orderly, [un]fair, and [in]efficient administration of public elections in Pennsylvania."[6] *In re Nomination Petition of*

---

[5] "To hold that a provision is directory rather than mandatory, does not mean that it is optional - to be ignored at will. Both mandatory and directory provisions of the legislature are meant to be followed. It is only in the *effect* of non-compliance that a distinction arises." *Borough of Pleasant Hills v. Carroll*, 125 A.2d 466, 469 (Pa. Super. 1956).

[6] Despite that the "fatal defect" language did not appear in the Ethics Act until it was amended in 1989, *see In re Nominating Petition of Olshefski*, 692 A.2d 1168 (Pa. Cmwlth. 1997), this Court nevertheless deemed the failure fatal to one's candidacy. In *State Ethics Commission v. Landauer*, 496 A.2d 862 (Pa. Cmwlth. 1985), the Ethics Commission sought to have primary candidates who did not file SOFIs declared ineligible to be on the ballot because former Section 4(d) of the Ethics Act, 65 P.S. § 404(d), prohibited candidates who failed to comply with the Ethics Act's requirements from holding office. Two candidates argued that since they were unopposed, their error should not disqualify them. This Court stated:

> We do not believe . . . that the legislature intended to excuse such candidates from the [Ethics] Act's [SOFI filing] requirements. We do believe, rather, that **it would be unwise to create or permit such an exception**. **The [Ethics] Act's intent is clearly to make available for public consideration, during the selection process, certain financial information regarding candidates so that the voters may determine what interests a candidate may have which might affect his conduct in office** . . . . It must be remembered that voters may cast 'write-in' votes for candidates whose names do not appear on a ballot. Moreover, **to endorse a case[-]by[-]case exemption** based on such circumstances **would place an inordinate burden on the [Ethics] Commission and would frustrate the [Ethics] Act's avowed purpose to ensure that the required information is made available in a timely fashion**.

*Landauer*, 496 A.2d at 864 (emphasis added). The Ethics Act's purpose under the former law was similarly stated:

> The Legislature hereby declares that public office is a public trust and that any effort to realize personal financial gain through public office

---

*Guzzardi*, 99 A.3d 381, 386 (Pa. 2014). However, that is another result of the Majority's ruling.[7] The Bureau properly notified Candidate in its June 2, 2017 letter (June 2, 2017 Letter) that she was certified as the Republican candidate for Township Tax Collector and expressly instructed:

> **Write-In Candidates who wish their name to appear on the November 2017 ballot are required to file with the** [**Bureau**] on or before June 30, 2017 a Candidate's Affidavit/Waiver of Expenses Account Reporting Affidavit . . . and a [SOFI]. . . . Upon completion of the above[-

---

other than compensation provided by law is a violation of that trust. In order to strengthen the faith and confidence of the people of the [s]tate in their government, the Legislature further declares that the people have a right to be assured that the financial interests of holders of or candidates for public office present neither a conflict nor the appearance of a conflict with the public trust. Because public confidence in government can best be sustained by assuring the people of the impartiality and honesty of public officials, this [Ethics] Act shall be liberally construed to promote complete disclosure.

*Snider v. Thornburgh*, 436 A.2d 593, 597 (Pa. 1981) (quoting Section 1 of the former Ethics Act, 65 P.S. § 401). We acknowledge that the *Landauer* Court relied upon *State Ethics Commission v. Baldwin*, 445 A.2d 1208 (Pa. 1982), which was superceded by statute, but given the former and current Ethics Acts' nearly identical statutory purposes, this Court should continue to apply its rationale in *Landauer*, and refuse to treat similar candidates differently under the current Ethics Act.

We further note that although the former Ethics Act did not contain "fatal defect" language, our Supreme Court did recognize that "if the information required by the [SOFIs] was, [not] in fact, subsequently received *and was* [*not*] *otherwise available for the purposes envisioned by the* [*Ethics*] *Act*[,]" it was "fatally taint[ed.]" *Landauer*, 496 A.2d at 864.

[7] The Majority seeks to offer a "rational explanation" for its "disparate treatment" of Nomination Candidates and Write-In Candidates. In doing so, it creates a new category of candidate which it labels "would-be candidate" and defines as one who "petitions to appear on the ballot and . . . does not become a candidate until she files the SOFI." Majority Op. at 13 n.19. Neither the Ethics Act nor its regulations contain any language that permits disparate treatment among candidates nor recognizes the existence of a "would-be candidate." As discussed above, the Ethics Act clearly defines candidate as one who has "taken the action necessary under the laws of this Commonwealth to qualify [her]self for nomination or election . . . ." 65 Pa.C.S. § 1102. The Ethics Act and its regulations specifically provide what steps a Nomination Candidate and Write-In Candidate must complete to be "qualified" for nomination or election. In essence, a Nomination Candidate must obtain a required number of signatures on a petition/paper and file the petition/paper, along with a SOFI, at a specified place by a date certain; while the Write-In Candidate must be elected and file a SOFI at a specified place by a date certain. These requirements reflect no disparate treatment.

6

]referenced documents, please return them to the [Bureau] **and the governing authority for the office in which you were nominated so that your name can be placed on the November ballot**.

June 2, 2017 Letter (underlining and bold emphasis added). Despite this notice, Candidate did not qualify herself for election and the Majority's ruling allows her name to be placed on the ballot, notwithstanding that the Majority has acknowledged that if Candidate were a Nomination Candidate, as opposed to a Write-In Candidate, it would not permit her name to be on the ballot.

While the Majority concedes that the Regulation mandates that Candidate "shall" file her SOFI with the Township and "shall" file it within 30 days of the Bureau's certification, Majority Op. at 10 n.17; *see also* 51 Pa. Code § 15.3(e), and that "[t]he word 'shall' by definition is mandatory, and it is generally applied as such[,] *Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1104 (Pa. 2007)[,]" the Majority concluded that this Court did not have the authority to address the **consequence** for the failure to comply with a legal mandate. However, the Pennsylvania Supreme Court and this Court's case law does not support that conclusion.

The law is well-settled that "[w]hile both mandatory and directory provisions of the legislature are meant to be followed, **the difference between a mandatory and directory provision is the consequence for noncompliance.**" *JPay, Inc. v. Dep't of Corr.*, 89 A.3d 756, 763 (Pa. Cmwlth. 2014) (emphasis added). This Court has further explained the differences between mandatory and directory statutes:

> In *In re: Sale of Real Estate by Lackawanna County Tax Claim Bureau,* 22 A.3d 308 (Pa. Cmwlth. [2011]) (*Lackawanna County*), . . . we explained:

7

. . . . **Failure to follow a mandatory statute renders the proceedings[8] void**, whereas failure to follow a directory statute does not.

*Lackawanna Cnty.*, 22 A.3d at 314 (citations omitted) (quoting *W. Penn Power Co. v. Pa. Pub. Util. Comm'n, . . .* 521 A.2d 75, 78 ([Pa. Cmwlth.] 1987)). '**Both mandatory and directory provisions of the legislature are meant to be followed. It is only in the effect of non-compliance that a distinction arises**.' *Id.* (quoting *Dep't of Transp., Bureau of Driver Licensing v. Claypool, . . .* 618 A.2d 1231, 1232 ([Pa. Cmwlth.] 1992)). '[F]ailure to strictly adhere to the requirements of a directory statute will not nullify the validity of the action involved.' *JPay, Inc.*[*,* 89 A.3d at 763]. The 'failure to follow a directory provision will render such proceedings voidable under only certain circumstances.' *Womack v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 83 A.3d 1139, 1142-43 (Pa. Cmwlth. [2014])[.]

*In re Condemnation by Commonwealth, Dep't of Transp., of Right-of-Way for State Route 0095, Section BSR*, 131 A.3d 625, 631-32 (Pa. Cmwlth. 2015) (emphasis added). "**Void**" means "**of no legal effect**; null." Black's Law Dictionary at 1709 (emphasis added).

Our Supreme Court has ruled:

[Section 306(a.2)(1) of **the** Workers' Compensation **Act** (Act),[9] 77 P.S. § 511.2(1),] **imposes a mandatory obligation** on the insurer to *request* an IRE **within the time**

---

[8] The reference to "proceedings" does not prohibit this Court from applying the holding to this case. Our Supreme Court has explained:

The distinction between a mandatory and a directory statute lies in the effect of noncompliance **upon the transaction involved**—not in the liability of the person who has violated the statute. Failure to conform to a mandatory procedure renders **the regulated activity** a nullity. Strict compliance with a directory provision, on the other hand, is not essential to the validity of the **transaction or proceeding** involved.

*Fishkin v. Hi-Acres, Inc.*, 341 A.2d 95, 98 n.5 (Pa. 1975) (emphasis added); *see also Dubin v. Cnty. of Northumberland*, 847 A.2d 769 (Pa. Cmwlth. 2004).

[9] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

8

**limits specified**. 'A mandatory provision is one the failure to follow which renders the proceeding to which it relates illegal and void.' *In re Nomination Papers of Am*[.] *Labor Party, . . .* 44 A.2d 48, 50 ([Pa.] 1945); *Mullen v. Bd. of Sch. Dirs*[.] *of DuBois Area Sch. Dist., . . .* 259 A.2d 877, 881 ([Pa.] 1969); *P*[*a.*] *State Police, Bureau of Liquor Control Enforcement v. Gen*[.] *Davis, Inc., . . .* 643 A.2d 670, 672 ([Pa.] 1994). **Where statutory provisions are mandatory, we have held as a general rule that they cannot be waived, and substantial compliance is not sufficient.**[10] [*Am. Labor Party,*] *. . .* 44 A.2d at 50; *Commonwealth v. Lukens Steel Co., . . .* 167 A.2d 142, 144 ([Pa.] 1961). Accordingly, in the instant case, **because the IRE request did not comply**

---

[10] The Majority interprets the law otherwise by stating "the failure of a write-in candidate to file a SOFI within the thirty-day period is not [a] fatal defect in the absence of the fatal defect language. Instead, it may be corrected prior to election and, therefore, would be an amendable defect." Majority Op. at 11 n.18. That is not the law. First, the SOFI filing requirement is mandatory. As such "substantial compliance [with the SOFI filing requirements] is not sufficient." *Dowhower*, 919 A.2d at 918.

Second, where no filing has occurred, there is no document in existence to amend. In *In re Paulmier*, 937 A.2d 364 (Pa. 2007), our Supreme Court specifically declared that "Section 1104 of the Ethics Act was intended by the Legislature to bar only those candidates from the ballot who fail to file [SOFIs] or who file them in an untimely manner." *Id.* at 371. Thus, **only where a SOFI is timely filed, would it be amendable**. As the *Paulmier* Court expressly held:

> Section 1104 does not bar any candidate from the ballot if he or she files in a timely manner, even if there are defects on the face of the form, so long as that candidate subsequently amends the form to correct the defect and comes into compliance with the Act in a timely manner. In other words, all defects related to the content of disclosures **on a timely filed statement of financial interest** are subject to timely amendment.

*Id.* at 371 (emphasis added). Although Section 1104 of the Ethics Act does not apply to Write-In Candidates, the Regulation mandates Write-In Candidates to file SOFIs. By treating Write-In Candidates' untimely SOFI filings as amendable where Nomination Candidates' untimely filings are treated as fatally flawed, the Majority creates a nonexistent, unwarranted and unfair distinction between such candidate types, which unequivocally undermines the General Assembly's clearly-stated intent.

9

> **with the requirements of** [S]ection [306(a.2)(1) of **the Act],
> **the IRE itself is void.**

*Dowhower v. Workers' Comp. Appeal Bd. (CAPCO Contracting)*, 919 A.2d 913, 918 (Pa. 2007) (emphasis added).

There is no question that the General Assembly intended, by the Ethics Act's clear language, to require all candidates for public office to file their SOFIs in a particular place and by a date certain, under penalty of their names not appearing on the ballot. The Majority's ruling undermines both the General Assembly's stated purpose and the Regulation's mandate by allowing Write-In Candidates to freely disregard the Ethics Act. Such a conclusion ignores the Legislature's purpose of assuring "that the financial interests of . . . **candidates for public office do not conflict with the public trust**," and "promot[ing] complete financial disclosure[.]"[11] 65 Pa.C.S. § 1101.1 (emphasis added); *see also Chanceford Aviation Props., L.L.P.* The Majority's holding also removes the General Assembly's requirement that Nomination Candidates and Write-In Candidates comply with the Commonwealth's laws to qualify for election. Moreover, the Majority's ruling completely ignores the General Assembly's directive that the "[Ethics Act] shall be liberally construed to promote complete financial disclosure as specified in this [Ethics Act]" before a candidate's name is placed on the ballot. 65 Pa.C.S. § 1101.1(a). Certainly, "[i]f the legal consequence of failing to comply with a directory provision were the same as that for failing to comply with a mandatory provision, there would be no meaningful distinction between the two." *Texas Dep't of Pub. Safety v. Dear*, 999 S.W.2d 148, 152 (Tex. App. 1999).

---

[11] The Majority admits that "there could be an instance where a candidate failed to file a SOFI . . . but the failure goes unchallenged." Majority Op. at 8 n.12. This Court should be loath to find that possibility acceptable given the General Assembly's purpose, and the Ethics Commission's attempt by the Regulation to prevent such a situation from occurring.

Clearly, the Regulation makes Candidate's filing of her SOFI with both the Bureau ***and*** the Township a mandatory condition to qualify as a candidate and, thus, have her name appear on the general election ballot.[12] Both the Regulation and the Bureau's June 2, 2017 Letter put Candidate on notice of that fact. Neither this Court nor the Ethics Commission may interpret the Ethics Act or the Regulation otherwise. Because Candidate did not timely file her SOFI with the Township, she did not comply with the law and is not qualified to be a candidate.

Accordingly, I believe this Court is constrained to rule that Candidate's name may not appear on the general election ballot due to her failure to file her SOFI with the Township in accordance with, and as mandated by, the Regulation, which was promulgated to implement the General Assembly's stated Ethics Act purpose.

Based on the foregoing, I would reverse the trial court's order.

_____
ANNE E. COVEY, Judge

---

[12] Notwithstanding, the Majority "interpret[s] this language as requiring a successful write-in candidate to affirmatively act within 30 days *to decline* the nomination. Otherwise, it is presumed that the candidate has accepted the nomination and will file the SOFI." Majority Op. at 8 n.14. Under the Majority's interpretation, a candidate can be elected in the primary election without any knowledge that he/she was in fact a Write-In Candidate and his/her name will automatically appear on the general election ballot without the individual needing to disclose his/her financial interests. Clearly, this was not the General Assembly's intent.

11